1  MICHAEL J. VARTAIN [SBN 92366]
   LINDA K. ADLER [SBN 199809]
2  **VARTAIN LAW GROUP**
   601 Montgomery Street, Suite 540
3  San Francisco, CA 94111-2608
   Telephone: [415] 391-1155
4  Facsimile: [415] 391-1177

5  Attorneys for Defendants
   BERKEL & COMPANY CONTRACTORS, INC.,
6  BRIAN ZUCKERMAN, JESSICA BRAVERMAN-SMITH,
   AND BRAVERMAN MEDIATION & CONSULTING

7

8              IN THE UNITED STATES DISTRICT COURT
                          FOR THE
9               NORTHERN DISTRICT OF CALIFORNIA
                          OAKLAND

10

11

| | |
|---|---|
| WINIFRED L. GIBSON-JONES, | Federal Case No.: CV 07 – 06440 WDB |
| Plaintiff, | |
| vs. | **DECLARATION OF BRIAN ZUCKERMAN IN SUPPORT OF MOTION TO DISMISS** |
| BERKEL & COMPANY CONTRACTORS, INC., a foreign corporation; CHERNE CONSTRUCTION COMPANY, a foreign corporation; JESSICA BRAVERMAN-SMITH, an individual; BRAVERMAN MEDIATION AND CONSULTING, a California business entity; BRIAN ZUCKERMAN, an individual; GREGORY A. SCHER, AKA WINGNUT SCHER, an individual, and DOES 1-50, inclusive, | [F.R.C.P. RULE 12(b)] |
| | Hearing Date: February 27, 2008<br>Time: 3:00 p.m.<br>Courtroom: Courtroom 4, 3rd Floor<br>Judge: Hon. Wayne D. Brazil<br>Complaint Filed: November 29, 2007 |
| Defendants. | |

1  I, BRIAN ZUCKERMAN, declare:

2  1. I am the West Coast Regional Manager of BERKEL & COMPANY CONTRACTORS, INC. I make the following statements on my own personal knowledge, and if called upon, could and would, testify thereto.

3  2. A true and correct copy of the investigative report I received from Jessica Braverman-Smith, a letter dated October 19, 2006, is attached as **Exhibit A**.

4  3. A true and correct copy of the letter I sent to Winifred Gibson-Jones, dated November 7, 2006, is attached as **Exhibit B**.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this ___ day of January 2008 in San Francisco, California.

1/15/2008
BRIAN R. ZUCKERMAN
_____
BRIAN ZUCKERMAN

---

**GIBSON-JONES v. BERKEL & COMPANY [USDC-ND #CV 07-06440 WDB]– DECL. OF BRIAN ZUCKERMAN IN SUPPORT OF MOTION TO DISMISS**

S:\Client\192 Berkel\002 Gibson-Jones\Pleadings\Motion to Dismiss\Declaration of Brian Zuckerman re motion to dismiss.doc

```
1  MICHAEL J. VARTAIN [SBN 92366]
   LINDA K. ADLER [SBN 199809]
2  VARTAIN LAW GROUP
   601 Montgomery Street, Suite 540
3  San Francisco, CA 94111-2608
   Telephone: [415] 391-1155
4  Facsimile:  [415] 391-1177

5  Attorneys for Defendants
   BERKEL & COMPANY CONTRACTORS, INC. and
6  BRIAN ZUCKERMAN

7
```

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

| | |
|---|---|
| WINIFRED L. GIBSON-JONES,<br><br>   Plaintiff,<br><br>vs.<br><br>BERKEL & COMPANY CONTRACTORS, INC., a foreign corporation; CHERNE CONSTRUCTION COMPANY, a foreign corporation; JESSICA BRAVERMAN-SMITH, an individual; BRAVERMAN MEDIATION AND CONSULTING, a California business entity; BRIAN ZUCKERMAN, an individual; GREGORY A. SCHER, AKA WINGNUT SCHER, an individual, and DOES 1-50, inclusive,<br><br>   Defendants. | Case No.: **CV 07-06440 WDB**<br><br>**PROOF OF SERVICE** |

**PROOF OF SERVICE**
Gibson-Jones v. Berkel and Company Contractors – USDC-ND: C - 07 – 06440

I am a resident of the State of California, over the age of eighteen (18) years, and not a party to the within action.  My business address is c/o Vartain Law Group, 601 Montgomery Street, Suite 540, San Francisco, California 94111-2608. On January 15, 2008, I served the following document(s) by the method indicated below:

- **DECLARATION OF BRIAN ZUCKERMAN IN SUPPORT OF MOTION TO DISMISS [F.R.C.P. RULE 12(b)].**

[X] By placing the document(s) listed above in a sealed envelope(s) with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] By transmitting via facsimile on this date from facsimile number [415] 391-1177 the document(s) listed above to the facsimile numbers(s) set forth below.  The transmission was completed before 5:00 p.m. and was reported complete and without error.  The transmitting fax machine properly issued the transmission report, which is attached to this proof of service.  Service by facsimile was made by agreement of the parties, confirmed in writing.  The transmitting fax machine complies with Cal.R.Ct. 2003(3).

[ ] By placing the document(s) listed above in a sealed envelope(s) and by causing personal delivery of the envelope(s) to the person(s) at the address(es) set forth below.  Signed proof of service by the process server or delivery service is attached to this proof of service.

[ ] By personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

[ ] By placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below.  A copy of the consignment slip is attached to this proof of service.

Attorneys for Plaintiff,
Winifred L. Gibson-Jones

Patrice R. Zabell, Esq.
Law Offices
2700 Ygnacio Valley Road, Ste. 270
Walnut Creek, CA  94598
Telephone: 1.925.932.9455
Facsimile: 1.925.932.9468

I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that this proof of service is executed on January 15, 2008, at San Francisco, California.

_____
Charissa Cung

---

**GIBSON-JONES v. BERKEL & COMPANY [USDC #CV07-06440WDB]– PROOF OF SERVICE**
S:\Client\192 Berkel\002 Gibson-Jones\Pleadings\Motion to Dismiss\ProofService20080115.doc

-1-

### Jessica A. Braverman-Smith
Human Resource Consultant
Cherne Contracting Corporation
P.O. Box 975
Minneapolis, Minnesota 55440

October 19, 2006

<u>Confidential</u>

Brian R. Zuckerman
Assistant Regional Manager
Berkel & Company Contractors, Inc.
855 Folsom Street #703
San Francisco, CA 94107-1185

<u>Re: Alleged Incident at Tosoro October 17, 2006</u>

Dear Mr. Zuckerman:

As you know, at approximately 1:00 pm PDT on October 17, I was called by Cherne's VP of Human Resources alerting me that an alleged sexual harassment incident had occurred at the Tosoro Martinez site recently that day. I immediately phoned you to advise of same and to request that Berkel do an immediate investigation to resolve any potential incident immediately.

You requested, and I agreed to go immediately to the site to assist you in an immediate and neutral investigation. I arrived on the site approximately 21 minutes after I received the initial call.

You and I agreed since Cherne was the outside party in this matter, it made sense that Cherne could do the best neutral investigation.

While I waited for your arrival, I began the investigation. Although Berkel is continuing its investigation in this matter as I write this letter, I thought it would be helpful to know what my limited investigation yielded so far.

I spoke to the alleged victim ( Party 1), a Ms. Winifred Gibson-Jones, I also spoke to the alleged harasser (Party 2), a Mr. Greg Scher. Additionally, I spoke to: Jerry Groce, "Groce", Douglas C. Williams, and other Berkel employees.

1

Party 1 relayed in essence that approximately 3 weeks prior, Party 2 made an offensive and sexual remark to her in the presence of other Berkel employees. Party 1 stated that at that time she felt that she could handle the situation and wanted to confront Party 2 herself without the intervention of Berkel Management. In fact, Party 1 admitted that she specifically asked her assistant manager (who did not witness the incident) to not do anything about the situation or tell anyone- as Party 1 wanted to handle it exclusively.

The Assistant Manager, corroborated Party 1's statements that she wanted to confront Party 2 herself and had been told by Party 1 that the situation had been handled.

It appeared that the incident that had taken place 3 weeks prior had been successfully addressed by Party 1.

Party 1 also relayed that just several hours earlier (October 17) party 2 made a racial remark in her presence that she found offensive. Party 1 said that the remark allegedly made today "broke the camel's back" and that is why she wanted to now report it to Berkel Management.

When I spoke to Party 2, he denied making any sexual or racial statements. During my interview with Party 2 it seemed that his understanding and his sensitivity to what is considered "offensive" and "unprofessional" was limited. He stated that he had been in Construction a long time and felt people had the Constitutional Right to say what they wished to say. *Party 2 was advised by Berkel Management present during his interview that he was expected to keep his language professional at all times while on the job. Party 2 agreed.*

When I spoke to the other Berkel employees, it appeared that one employee who was close to Party 1, corroborated her version of the remarks made 3 weeks ago by Party 2 in the presence of Party 1. This employee did not hear the alleged racial remark made on that day. Other employees were not able to corroborate one way or the other the exact remarks alleged to have been said. In fact, one employee told a completely different version of the alleged racial remark about Filipino people, stating "all that was asked was whether I was Filipino."

When I spoke to the on site Manager, Jerry Groce, it became very clear that until a few hours prior, he had no knowledge about the situation. When he saw that Party 1 was upset that day, he asked her what was going on. Groce immediately notified Berkel Management.

While Berkel continued its investigation, Berkel Management told me it had decided to remove Party 2 from the site. That decision was made on October 17.

2

The next day, October 18, I called Party 1 at the site to see how she was doing, as I had been advised by Berkel that Party 2 was no longer working for Berkel on the site pending its continued investigation. Party 1 told me that she was doing fine and was working. Several minutes later, Party 1's business agent stopped by to talk with me and he told me that Party 1 appreciated my follow up call.

I told the Business Agent that Cherne was not involved in this matter. I explained that I had been asked by Berkel to do a neutral investigation. I shared with the Business Agent briefly that I had not completed my investigation, or my report. I also shared with the Business Agent that my preliminary investigation so far seemed to suggest that Party 1 asked that she be able to confront Party 2 herself 3 weeks ago and that all concerned had been told that it had been successfully handled. The business agent agreed that Party 1 thought she could handle it, and that part of her emotions, in his opinion, might be because she felt that she had failed herself.

In the afternoon of October 18, I was out at the site with our Safety department; I saw Party 1 and again asked her how she was doing. She said she was doing fine but she was worried about any "repercussions" for coming forward. I asked her directly if there had been any repercussions so far, and she said there had not. She asked for my business card, which I gave her, and I told her if she had any further concerns she could call me.

At the time I am writing this report, I have no knowledge of either Party 1 or Party 2's history with Berkel. Further, I do not know what final decisions, if any, Berkel has reached regarding the outcome of this incident.

I believe Cherne has now correctly turned this matter completely back to Berkel for further handling. This concludes my involvement in this matter.

Please let me know if I can answer any questions regarding the foregoing.

Very Truly Yours,

Jessica A. Braverman

cc: Cathy C. LaPoint, VP of Human Resources, Cherne Contracting Corporation

3



www.berkelandcompany.com

AUGER PRESSURE GROUTED PILING I DISPLACEMENT PILING I DRIVEN PILING I PRESSURE GROUTING I SHEETING & SHORING I MICRO PILING

Reply To: Regional Office
Berkel & Company Contractors, Inc.
855 Folsom Street, Suite 703
San Francisco, CA 94107
(415) 495-3627 • (415) 495-2746 fax

Winifred Gibson-Jones                                           November 7, 2006
381 Arthur Rd. #2C
Martinez, CA  94553

Dear Ms. Gibson-Jones:

This is to advise you that I reviewed your complaint of harassment by Mr. Greg Scher and also reviewed the preliminary investigation prepared by Chrene Contracting Corporation (a copy of which is attached).

Although the investigation by Chrene was inclusive, based on my review of this information, and Berkel and Company Contractors, Inc. policies prohibiting harassment based on sex (a copy of which is available for your review should you so request), I concluded that Mr. Scher's behavior towards you was unacceptable and not in compliance with Berkel's anti-harassment policies and that corrective action was necessary. I can inform you of the following:

1. Mr. Scher is no longer employed with Berkel and will not in the future be employed with the company.
2. Berkel intends to conduct anti-harassment training for all supervisory personnel at its Martinez project site as soon as staffing increases, which is expected to be in February 2007.

The company regrets the difficulties you experienced and has decided to pay you full salary for your employment with Berkel as a pile drive at the Tosoro Martinez project site through October 27, 2006. Please note that the project is rapidly concluding and numerous employees, including other pile drivers, have been laid-off over the last few weeks.

Please be assured that Berkel maintains a no retaliation policy (a copy of which is available for your review should you so request). In no manner does or will your complaint of harassment impact your eligibility to again work for Berkel. In fact, we invite you to come back and work for Berkel as staffing again increases and will consider you for employment as soon as you let us know of your interest.

Please do not hesitate to contact me, or your Union representative, if we can be of any additional assistance to you or should you have questions.

Sincerely,

Brian Zuckerman
Assistant West Coast Regional Manager
Berkel and Company Contractors, Inc.

P.S.:   I have transmitted your request for a lump sum payment to corporate and will let you know this Thursday if it has been approved.

cc:   Pat Karinen, NCCRC Senior Field Rep.

2649 S. 142nd Street, P.O. Box 335 • Bonner Springs, Kansas 66012 - **(913) 422-5125** - (913) 441-0402 fax - Email: info@berkelapg.com

KANSAS CITY - ATLANTA - BALTIMORE - CHICAGO - HOUSTON - LOUISVILLE - ORLANDO - SAN FRANCISCO - WASHINGTON DC
*"An Equal Opportunity Employer"*