| | |
|---|---|
| 1 | MICHAEL J. VARTAIN [SBN 92366]<br>LINDA K. ADLER [SBN 199809] |
| 2 | **VARTAIN LAW GROUP**<br>601 Montgomery Street, Suite 540 |
| 3 | San Francisco, CA 94111-2608<br>Telephone: [415] 391-1155 |
| 4 | Facsimile: [415] 391-1177 |
| 5 | Attorneys for Defendants<br>BERKEL & COMPANY CONTRACTORS, INC., |
| 6 | BRIAN ZUCKERMAN, JESSICA BRAVERMAN-SMITH<br>(erroneously sued as JESSICA BRAVERMAN-SMITH), |
| 7 | AND BRAVERMAN MEDIATION & CONSULTING |

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

| | |
|---|---|
| WINIFRED L. GIBSON-JONES,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>BERKEL & COMPANY CONTRACTORS, INC., a foreign corporation; CHERNE CONSTRUCTION COMPANY, a foreign corporation; JESSICA BRAVERMAN-SMITH, an individual; BRAVERMAN MEDIATION AND CONSULTING, a California business entity; BRIAN ZUCKERMAN, an individual; GREGORY A. SCHER, AKA WINGNUT SCHER, an individual, and DOES 1-50, inclusive,<br><br>　　　　Defendants. | Federal Case No.: **CV 07 – 06440 WDB**<br><br>**DECLARATION OF JESSICA BRAVERMAN IN SUPPORT OF DEFENDANT BERKEL & COMPANY CONTRACTOR, INC.'S REQUEST FOR HEARING AND/OR OBJECTION TO ORDER RE MOTION TO DISMISS**<br><br>Hearing Date:　February 27, 2008<br>Time:　　　　　3:00 p.m.<br>Courtroom:　　Courtroom 4, 3rd Floor<br>Judge:　　　　Hon. Wayne D. Brazil<br>Complaint Removed: December 21, 2007 |

I, JESSICA BRAVERMAN, declare:

1. I was retained by Berkel to act as its agent for the sole purpose of assisting Berkel in the investigation of Plaintiff's sexual harassment complaint against Gregory Scher. I make the following statements on my own personal knowledge, and if called upon, could and would, testify thereto.

2. I have read Plaintiff's Verified Complaint.

3. With respect to all of the conduct by me, I was acting in my capacity as an agent of Berkel.

4. With respect to any and all of my conduct, I was acting solely in the interests of Berkel, and not for any benefit to myself.

5. At the time that I was retained by Berkel to investigate Plaintiff's sexual harassment complaint against Mr. Scher, I was affiliated with Defendant Cherne Construction Company, another contractor at the site. I was designated by Berkel to act as its agent for the sole purpose of conducting a limited, neutral investigation of Plaintiff's complaint against Mr. Scher, which I did on or about October 17, 2006. I understood that I was designated by Berkel to conduct the investigation because I was affiliated with Cherne, an outside party in this matter, and it was felt that I was in a good position to conduct a neutral investigation.

6. The first knowledge that I had of Mr. Scher's alleged sexual harassment of Plaintiff was after the alleged harassment took place, when I was contacted by Cherne on or about October 17, 2006 and informed of Plaintiff's complaint. I did not participate in Mr. Scher's alleged acts of sexual harassment of Plaintiff, nor did I assist Mr. Scher in his alleged harassment of Plaintiff.

7. I prepared a report to Brian Zuckerman, dated October 19, 2006, explaining the results of my limited, neutral investigation on or about October 17, 2006. A true and correct of the report I prepared, dated October 19, 2006, is attached as **Exhibit A**.

8. I did not participate in Berkel's decision making process with respect to terminating Mr. Scher's employment with Berkel. Apart from the October 19, 2006 report that I prepared subsequent to my investigation on or about October 17, 2006, the limited assignment

1  for which Berkel had retained me was completed as of the conclusion of my investigation on or about October 17, 2006.

9.  My company, Braverman Mediation & Consulting ("BMC"), which is a sole proprietorship, was not in existence during any of the times referenced in Plaintiff's Verified Complaint. BMC did not come into existence until January or February of 2007. I was not acting as an agent of BMC during my investigation of Plaintiff's complaint on or about October 17, 2006, as BMC was not even in existence at that time. BMC does not have, and has not had, any involvement with any of the events and/or allegations described in Plaintiff's Verified Complaint.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 21st day of February 2008 in Walnut Creek, California.



JESSICA BRAVERMAN

1 | MICHAEL J. VARTAIN [SBN 92366]
LINDA K. ADLER [SBN 199809]
2 | **VARTAIN LAW GROUP**
601 Montgomery Street, Suite 540
3 | San Francisco, CA 94111-2608
Telephone: [415] 391-1155
4 | Facsimile: [415] 391-1177

5 | Attorneys for Defendants
BERKEL & COMPANY CONTRACTORS, INC.,
6 | BRIAN ZUCKERMAN, JESSICA BRAVERMAN
(erroneously sued as JESSICA BRAVERMAN-SMITH)
7 | AND BRAVERMAN MEDIATION & CONSULTING

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

| WINIFRED L. GIBSON-JONES, | ) Case No.: **CV 07 – 06440 WDB** |
|---|---|
| Plaintiff, | ) |
| | ) **PROOF OF SERVICE** |
| v. | ) |
| | ) |
| BERKEL & COMPANY CONTRACTORS, INC., a foreign corporation; CHERNE CONSTRUCTION COMPANY, a foreign corporation; JESSICA BRAVERMAN-SMITH, an individual; BRAVERMAN MEDIATION AND CONSULTING, a California business entity; BRIAN ZUCKERMAN, an individual; GREGORY A. SCHER, AKA WINGNUT SCHER, an individual, and DOES 1-50, inclusive, | ) |
| | ) Hearing Date:  February 27, 2008 |
| | ) Time:  3:00 p.m. |
| | ) Courtroom:  Courtroom 4, 3rd Floor |
| Defendants. | ) Judge:  Hon. Wayne D. Brazil |
| | ) Complaint Removed: December 21, 2007 |

---

**GIBSON-JONES v. BERKEL & COMPANY [USDC #CV07-06440WDB]– PROOF OF SERVICE**
S:\Client\192 Berkel\002 Gibson-Jones\Pleadings\Motion to Dismiss\ProofofService20080225.doc

**PROOF OF SERVICE**
Gibson-Jones v. Berkel and Company Contractors – USDC-ND: C - 07 – 06440

I am a resident of the State of California, over the age of eighteen (18) years, and not a party to the within action. My business address is c/o Vartain Law Group, 601 Montgomery Street, Suite 540, San Francisco, California 94111-2608. On February 25, 2008, I served the following document(s) by the method indicated below:

- **DECLARATION OF BRIAN ZUCKERMAN IN SUPPORT OF DEFENDANT BERKEL & COMPANY CONTRACTOR, INC.'S REQUEST FOR HEARING AND/OR OBJECTION TO ORDER RE MOTION TO DISMISS; and**
- **DECLARATION OF JESSICA BRAVERMAN IN SUPPORT OF DEFENDANT BERKEL & COMPANY CONTRACTOR, INC.'S REQUEST FOR HEARING AND/OR OBJECTION TO ORDER RE MOTION TO DISMISS.**

☐ By placing the document(s) listed above in a sealed envelope(s) with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ By transmitting via facsimile on this date from facsimile number [415] 391-1177 the document(s) listed above to the facsimile numbers(s) set forth below. The transmission was completed before 5:00 p.m. and was reported complete and without error. The transmitting fax machine properly issued the transmission report, which is attached to this proof of service. Service by facsimile was made by agreement of the parties, confirmed in writing. The transmitting fax machine complies with Cal.R.Ct. 2003(3).

☐ By placing the document(s) listed above in a sealed envelope(s) and by causing personal delivery of the envelope(s) to the person(s) at the address(es) set forth below. Signed proof of service by the process server or delivery service is attached to this proof of service.

☐ By personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ By placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below. A copy of the consignment slip is attached to this proof of service.

Attorneys for Plaintiff,
Winifred L. Gibson-Jones

Patrice R. Zabell, Esq.
Law Offices
2700 Ygnacio Valley Road, Ste. 270
Walnut Creek, CA 94598
Telephone: 1.925.932.9455
Facsimile: 1.925.932.9468

I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that this proof of service is executed on February 25, 2008, at San Francisco, California.

_____
Charissa Gung

| | |
|---|---|
| From: Origin ID: APCA (415)391-1155<br>Linda Adler, Esq.<br>Vartain Law Group<br>601 Montgomery Street, Suite 540<br>San Francisco, CA 94111 | Ship Date: 25FEB08<br>ActWgt: 1 LB<br>System#: 3969973/INET8010<br>Account#: S ******** |



CLS120707/21/24

SHIP TO: 9259329455     BILL SENDER

**Patrice Zabell**
**Law Offices**
**2700 YGNACIO VALLEY RD STE 270**

**WALNUT CREEK, CA 945983463**

Delivery Address Bar Code

Ref #     Gibson-Jones Berkel
Invoice #
PO #
Dept #

RELEASE#: 3785346

TRK# 7910 0734 8332
0201

TUE - 26FEB     A2
**PRIORITY OVERNIGHT**

**WA CCRA**

94598
CA-US
OAK



---

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# Jessica A. Braverman-Smith

Human Resource Consultant
Cherne Contracting Corporation
P.O. Box 975
Minneapolis, Minnesota 55440

October 19, 2006

Confidential

Brian R. Zuckerman
Assistant Regional Manager
Berkel & Company Contractors, Inc.
855 Folsom Street #703
San Francisco, CA 94107-1185

Re: Alleged Incident at Tosoro October 17, 2006

Dear Mr. Zuckerman:

As you know, at approximately 1:00 pm PDT on October 17, I was called by Cherne's VP of Human Resources alerting me that an alleged sexual harassment incident had occurred at the Tosoro Martinez site recently that day. I immediately phoned you to advise of same and to request that Berkel do an immediate investigation to resolve any potential incident immediately.

You requested, and I agreed to go immediately to the site to assist you in an immediate and neutral investigation. I arrived on the site approximately 21 minutes after I received the initial call.

You and I agreed since Cherne was the outside party in this matter, it made sense that Cherne could do the best neutral investigation.

While I waited for your arrival, I began the investigation. Although Berkel is continuing its investigation in this matter as I write this letter, I thought it would be helpful to know what my limited investigation yielded so far.

I spoke to the alleged victim (Party 1), a Ms. Winifred Gibson-Jones, I also spoke to the alleged harasser (Party 2), a Mr. Greg Scher. Additionally, I spoke to: Jerry Groce, "Groce", Douglas C. Williams, and other Berkel employees.

Party 1 relayed in essence that approximately 3 weeks prior, Party 2 made an offensive and sexual remark to her in the presence of other Berkel employees. Party 1 stated that at that time she felt that she could handle the situation and wanted to confront Party 2 herself without the intervention of Berkel Management. In fact, Party 1 admitted that she specifically asked her assistant manager (who did not witness the incident) to not do anything about the situation or tell anyone- as Party 1 wanted to handle it exclusively.

The Assistant Manager, corroborated Party 1's statements that she wanted to confront Party 2 herself and had been told by Party 1 that the situation had been handled.

It appeared that the incident that had taken place 3 weeks prior had been successfully addressed by Party 1.

Party 1 also relayed that just several hours earlier (October 17) party 2 made a racial remark in her presence that she found offensive. Party 1 said that the remark allegedly made today "broke the camel's back" and that is why she wanted to now report it to Berkel Management.

When I spoke to Party 2, he denied making any sexual or racial statements. During my interview with Party 2 it seemed that his understanding and his sensitivity to what is considered "offensive" and "unprofessional" was limited. He stated that he had been in Construction a long time and felt people had the Constitutional Right to say what they wished to say. Party 2 was advised by Berkel Management present during his interview that he was expected to keep his language professional at all times while on the job. Party 2 agreed.

When I spoke to the other Berkel employees, it appeared that one employee who was close to Party 1, corroborated her version of the remarks made 3 weeks ago by Party 2 in the presence of Party 1. This employee did not hear the alleged racial remark made on that day. Other employees were not able to corroborate one way or the other the exact remarks alleged to have been said. In fact, one employee told a completely different version of the alleged racial remark about Filipino people, stating "all that was asked was whether I was Filipino."

When I spoke to the on site Manager, Jerry Groce, it became very clear that until a few hours prior, he had no knowledge about the situation. When he saw that Party 1 was upset that day, he asked her what was going on. Groce immediately notified Berkel Management.

While Berkel continued its investigation, Berkel Management told me it had decided to remove Party 2 from the site. That decision was made on October 17.

The next day, October 18, I called Party 1 at the site to see how she was doing, as I had been advised by Berkel that Party 2 was no longer working for Berkel on the site pending its continued investigation. Party 1 told me that she was doing fine and was working. Several minutes later, Party 1's business agent stopped by to talk with me and he told me that Party 1 appreciated my follow up call.

I told the Business Agent that Cherne was not involved in this matter. I explained that I had been asked by Berkel to do a neutral investigation. I shared with the Business Agent briefly that I had not completed my investigation, or my report. I also shared with the Business Agent that my preliminary investigation so far seemed to suggest that Party 1 asked that she be able to confront Party 2 herself 3 weeks ago and that all concerned had been told that it had been successfully handled. The business agent agreed that Party 1 thought she could handle it, and that part of her emotions, in his opinion, might be because she felt that she had failed herself.

In the afternoon of October 18, I was out at the site with our Safety department; I saw Party 1 and again asked her how she was doing. She said she was doing fine but she was worried about any "repercussions" for coming forward. I asked her directly if there had been any repercussions so far, and she said there had not. She asked for my business card, which I gave her, and I told her if she had any further concerns she could call me.

At the time I am writing this report, I have no knowledge of either Party 1 or Party 2's history with Berkel. Further, I do not know what final decisions, if any, Berkel has reached regarding the outcome of this incident.

I believe Cherne has now correctly turned this matter completely back to Berkel for further handling. This concludes my involvement in this matter.

Please let me know if I can answer any questions regarding the foregoing.

Very Truly Yours,

Jessica A. Braverman

cc: Cathy C. LaPoint, VP of Human Resources, Cherne Contracting Corporation