1  PATRICE R. ZABELL, SBN# 215459
2  LAW OFFICES OF PATRICE R. ZABELL
   2700 Ygnacio Valley Road, Suite 237
3  Walnut Creek, California 94598-3463
   Telephone:    (925) 932-9455
4  Facsimile:    (925) 932-9468
   Email:  zabell_law@comcast.net
5
   Attorney for Plaintiff
6  WINIFRED L. GIBSON-JONES

7

8                    FEDERAL DISTRICT COURT

9        IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND

10

11 WINIFRED L. GIBSON-JONES,            Case No. CV 07-06440 WDB

12          Plaintiff,                  **FIRST AMENDED VERIFIED COMPLAINT**

13    v.
                                        1.    **SCHER – SEXUAL HARASSMENT  –**
14 BERKEL & COMPANY                          **GOV'T CODE § 12940 ET SEQ.**
   CONTRACTORS, INC., a foreign
15 corporation; CHERNE CONTRACTING      2.    **SCHER: INTENTIONAL INFLICTION**
   CORPORATION, a foreign corporation;       **OF EMOTIONAL DISTRESS – CIVIL**
16 JESSICA BRAVERMAN-SMITH, AKA             **CODE § 1714.**
   JESSICA BRAVERMAN, HR Consultant,
17 Cherne Contracting Corporation;      3.    **BERKEL:  BREACH OF DUTY TO**
   GREGORY A. SCHER, AKA WINGNUT             **TAKE IMMEDIATE STEPS TO**
18 SCHER, an individual, and DOES 1-50,     **INVESTIGATE AND CORRECT**
   inclusive,                                **SEXUAL HARASSMENT - GOV'T**
19                                           **CODE §§ 12920, 12940(j)(1).**
            Defendants.
20
                                        4.    **BERKEL:  BREACH OF DUTY TO**
21                                           **TAKE ALL REASONABLE STEPS**
                                             **NECESSARY TO PREVENT**
22                                           **DISCRIMINATION AND**
                                             **HARASSMENT FROM OCCURRING –**
23                                           **GOV'T CODE §§ 12920, 12940, 12950**
                                             **ET SEQ.**
24

25

26                                      5.    **CHERNE: AIDING AND ABETTING**
                                             **BREACH OF DUTY TO CONDUCT AN**
27                                           **OBJECTIVE AND THOROUGH**
                                             **INVESTIGATION INTO**
28                                           **ALLEGATIONS OF SEXUAL**

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

                                        1
FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*          Case No. CV 07-06440-WDB

HARASSMENT - GOV'T CODE §§
12920, 12940, subds. (i), (j)(1).

6.    BRAVERMAN: AIDING AND
ABETTING BREACH OF DUTY TO
CONDUCT AN OBJECTIVE AND
THOROUGH INVESTIGATION INTO
ALLEGATIONS OF SEXUAL
HARASSMENT - GOV'T CODE §§
12920, 12940, subds. (i), (j)(1).

Plaintiff, Winifred L. Gibson-Jones, alleges as follows:

## JURISDICTION

1.    Plaintiff, Winifred L. Gibson-Jones, (hereinafter, "Plaintiff") is, and at all times mentioned in this complaint was, a person domiciled in the State of California.

2.    Defendant, Berkel & Company Contractors, Inc., (hereinafter, "Berkel") is, and at all times mentioned in this complaint was, a foreign corporation doing business in California.

3.    Defendant, Cherne Contracting Corporation, (hereinafter, "Cherne"), is and at all times mentioned in this complaint was, a foreign corporation doing business in California.

4.    Defendant, Jessica Braverman-Smith, HR Consultant, aka Jessica Braverman, (hereinafter, "Braverman"), is and at all times mentioned in this complaint was, a person doing business in California.

5.    Defendant, Braverman Mediation and Consulting, (hereinafter, "BMC"), is a business entity which Braverman held out as doing business in the state of California since 1995. BMC currently is a sole proprietorship.

6.    Defendant, Brian Zuckerman, (hereinafter, "Zuckerman"), is, and at all times mentioned in this complaint was, a person doing business in California.

7.    Gregory A. Scher, aka Wingnut, (hereinafter, "Wingnut" or "Scher"), is and at all times mentioned in this complaint was, an individual domiciled in the state of Missouri.

8.    At this time, Plaintiff does not know the true names of Defendants Does 1 through 50, inclusive, and therefore sues them by those fictitious names.  Plaintiff is informed and

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

2
FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*    Case No. CV 07-06440-WDB

1  believes that DOE Defendants are agents of named Defendants, acting in the course and scope of

2  their employment.

3                        **FACTS COMMON TO ALL CAUSES OF ACTION**

4          9.      Plaintiff is a woman.

5          10.     Plaintiff is approximately 5'1" tall.

6          11.     At the time of the incidents alleged herein, Plaintiff was employed by Berkel as

7  an apprentice Pile Driver, earning $ 27.50 per hour plus benefits valued at approximately $18.65

8  per hour.  Plaintiff is a member of Pile Drivers, Divers, Carpenters, Bridge, Wharf and Dock

9  Builders Local Union #34.

10         12.     Plaintiff was employed by Berkel pursuant to a Master Labor Agreement

11 between Associated General Contractors of California, Inc., and Pile Drivers, Divers,

12 Carpenters, Bridge, Wharf and Dock Builders Local Union #34.

13         13.     Plaintiff alleges that Berkel was performing construction work as a subcontractor

14 at the Tesoro Refinery pursuant to a contract it had with Cherne Contracting Corporation, which

15 was the general contractor on the job.

16         14.     At all times relevant herein, Berkel was Plaintiff's employer within the meaning

17 of the California Fair Employment and Housing Act, Gov't Code § 12900 et seq., (hereinafter,

18 "FEHA").

19         15.     Plaintiff alleges that Berkel was Cherne's subcontractor on the Tesoro project;

20 that employees of both Cherne and Berkel worked side-by-side at the jobsite; and  that Cherne

21 managed certain areas of Berkel's business operations, including, for example, safety training.

22         16.     At all times relevant herein, Braverman was acting as an agent of Cherne for

23 purposes of imposing liability on Cherne under the doctrine of respondeat superior.  Plaintiff

24 alleges that Braverman now asserts that she was a part-time employee of Cherne at the time of

25 the incidents alleged herein, working for Cherne as a Human Resources Specialist.

26         17.     At all times relevant herein, Braverman was acting as an agent of Berkel for

27 purposes of imposing liability on Berkel pursuant to the doctrine of respondeat superior.

28 Plaintiff further alleges that Braverman also was acting for Berkel as an independent contractor,

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

3

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*          Case No. CV 07-06440-WDB

1    in that she is an attorney who previously was unaffiliated with Berkel, and she represented to

2    Plaintiff that Berkel retained her for the purpose of conducting a neutral objective investigation.

3         18.    At all time relevant here, Zuckerman was acting as an agent of Berkel for

4    purposes of imposing liability on Berkel pursuant to the doctrine of respondeat superior.

5         19.    Plaintiff alleges that at all times relevant herein, Zuckerman was a managing

6    agent of Berkel.

7         20.    Wingnut is a man.

8         21.    Wingnut is approximately 6'5" tall, and weighs approximately 240 lbs.

9         22.    At all times relevant herein, Wingnut was an employee of Berkel, who performed

10   the job of crane operator.

11        23.    At all times relevant herein, Wingnut was Plaintiff's co-worker.

12        24.    Wingnut is domiciled in St. Louis, Missouri, and is a licensed crane operator.

13        25.    Berkel's practice is to have core crews of regular employees who travel interstate

14   to jobsites, where Berkel supplements the core crew with workers local to the jobsite.  Berkel

15   pays travel expenses for the employees on its core crew, and compensates the employees on its

16   core crew differently than the local workers, in that they are eligible for bonuses.  Wingnut was

17   a core crew member whom Berkel had flown from St. Louis to the Bay Area, and who was

18   housed in a local hotel at Berkel's expense.

19        26.    Plaintiff began working for Berkel at its Tesoro Refinery jobsite in Martinez,

20   California, on September 13, 2006.  During the course of Plaintiff's employment, Wingnut

21   routinely engaged in a continuing pattern of conduct which included uttering sexual and ethnic

22   vulgarities and epithets, (hereinafter, Wingnut's "outrageous rants").

23        27.    Managers of Berkel were well aware of Wingnut's outrageous rants throughout

24   Plaintiff's employment with Berkel.

25        28.    Managers of Cherne were well aware of Wingnut's outrageous rants throughout

26   Plaintiff's employment with Berkel.

27        29.    Berkel routinely shuttled its employees by van from the parking lot at the Tesoro

28   Refinery to the jobsite itself.    Plaintiff and Wingnut were shuttled together in the van on a

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

4

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*         Case No. CV 07-06440-WDB

1  routine basis, during which Wingnut engaged in his outrageous rants in the presence of Berkel

2  managers who were driving the van.

3       30.    Berkel and Cherne employees shared common lunch and break areas at the

4  Tesoro jobsite.  Plaintiff and Wingnut frequently crossed paths at the lunch tent and in the

5  smoking area, during which times Wingnut engaged in his outrageous rants in the presence of

6  Berkel and Cherne managers.

7       31.    Wingnut's outrageous rants were unwelcome to Plaintiff.  Plaintiff was offended

8  by Wingnut's outrageous rants.

9       32.    Plaintiff alleges that Berkel managers acquiesced in, and ratified Wingnut's

10  outrageous rants.

11      33.    Plaintiff alleges that Cherne managers acquiesced in, and ratified Wingnut's

12  outrageous rants.

13      34.    Plaintiff is a mature, intelligent, and articulate woman, who generally works on

14  heavy construction sites with otherwise all-male crews.  As a result, Plaintiff has become

15  somewhat inured to rough language in her work environment, and although she sometimes was

16  offended, her practice was to stay focused on the job and to ignore the offensive comments to

17  the best of her ability.  Plaintiff did so in part because she wanted to be accepted as an equal

18  among her male co-workers despite the fact that she is a woman, and in other part because she

19  wanted to demonstrate to her then-employer that she was a productive team player.  It was with

20  this attitude that Plaintiff approached her employment at the Tesoro jobsite.

21      35.    Some time during the second week on the job, Plaintiff and Wingnut were in the

22  designated smoking area at the Tesoro jobsite, at which time Wingnut stated to her, "nice tits."

23  Wingnut's statement to her, "nice tits," was different from all previous offensive comments that

24  she had endured because Wingnut addressed Plaintiff directly in what she perceived to be an

25  assertive, mean-spirited manner.

26      36.    Plaintiff alleges that Steve Paine, (hereinafter, "Paine"), Berkel's Superintendent

27  at the Tesoro Refinery jobsite, heard Wingnut say, "nice tits" to Plaintiff, but that Paine was

28

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

5

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*            Case No. CV 07-06440-WDB

1  unresponsive.  As a result, Plaintiff inferred that Wingnut's conduct was acceptable in Berkel's

2  work environment.

3          37.    Plaintiff was personally offended; moreover, Plaintiff worried that Wingnut, who

4  towered over her, was going to sexually harass her on a routine basis.  However, in part because

5  it was merely her second week on the job and thus she believed that she had not yet gained her

6  new employer's confidence that she would be a productive team player, Plaintiff was reluctant

7  to take any action.  Moreover, because Paine had heard Wingnut's comment to her but did not

8  take any action, Plaintiff was fearful that Paine would consider her a troublemaker if she

9  complained.  Consequently, Plaintiff resolved to resort to self-help; to wit, Plaintiff decided to

10 stay away from Wingnut as much as possible, and to ignore his comments when their paths

11 crossed.  Plaintiff continued to worry that sooner or later Wingnut would continue to harass her;

12 nevertheless, Plaintiff hoped for the best and remained resolved to focus on her livelihood.

13         38.    Plaintiff is a chain-smoker, and strict safety rules at the Tesoro refinery

14 prohibited smoking anywhere on the jobsite other than secure areas explicitly designated for

15 smokers. Wingnut also is a smoker, so there were many times when Plaintiff and Wingnut were

16 both in the smoking area at the same time.   It was in the smoking area, in the presence of other

17 Berkel and Cherne employees, including Joe Jensen, (hereinafter, "Jensen"), Plaintiff's foreman,

18 that the further incidents giving rise to this action largely occurred.

19         39.    After approximately three weeks after Plaintiff first started on the job, Plaintiff

20 was on a break in the smoking area along with Jensen, her foreman, and several other

21 employees, including Wingnut.  Plaintiff alleges that Wingnut subjected her to a vicious visual

22 and verbal attack, to wit, Wingnut thrust his hips in a sexually suggestive manner while

23 gesticulating that he held Plaintiff's head in his hands, and stated to Plaintiff,

24         If you were my wife, I would give it to you until you had stretch marks
           around your mouth.  But don't worry, I would respect you on your
25         period; I would turn you over and fuck you in your ass.

26 Several of the men who were present laughed at Wingnut's vicious visual and verbal sexual

27 attack on Plaintiff, including Jensen.

28

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

6

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*                    Case No. CV 07-06440-WDB

40.    Plaintiff alleges that Wingnut psychologically raped Plaintiff, to wit, he intended to force into Plaintiff's mind visualizations of him performing those demeaning and controlling sexual acts; moreover, Plaintiff alleges that he succeeded.  As a result of Wingnut's vicious visual and verbal sexual attack, Plaintiff was in emotional shock.  Plaintiff continues to have mental visualizations of Wingnut performing those demeaning and controlling sexual acts upon her; and Plaintiff cannot get them out of her mind.  As a result, Plaintiff suffers from ongoing severe emotional distress related to those disgusting unwanted mental visualizations.  Furthermore, Plaintiff was deeply humiliated because all of the men in the smoking area - her co-workers and her foreman - heard Wingnut's vicious attack.  Plaintiff alleges that Wingnut intended to humiliate Plaintiff before her male co-workers, and that his acts were motivated by a perverse desire to entertain them at her expense.

41.    Although Plaintiff was emotionally distraught as a result of having been psychologically raped by Wingnut in the presence of her foreman and male co-workers, she still was afraid that if she lodged a complaint she would experience retaliation, especially since her foreman and many of her co-workers laughed at Wingnut's vicious attack.  Plaintiff was afraid for her own safety.

42.    Plaintiff reported the incident to Paine, who told Plaintiff that he would talk to Wingnut.  However, because Plaintiff was afraid of retaliation from Wingnut and others, she told Paine that she believed she could handle the matter on her own.  On information and belief, Plaintiff alleges that Paine took no action to further investigate the facts or to take corrective action.

43.    On October 16, 2006, Plaintiff and Wingnut were once again in the smoking area at the same time.  Also present were several other Berkel employees.  Wingnut launched into yet another outrageous rant, this time uttering ethnic vulgarities against Filipinos, the disabled, Arabs, Jews, and women.   Plaintiff has a daughter who is half-Filipino, so for her, Wingnut's rant about Filipinos was a mean-spirited, hateful attack on her child.  For Plaintiff, it was the final straw, and she turned to leave the area.  As she turned to leave Wingnut stated, "where are *you* going?" Plaintiff broke down emotionally and told Wingnut that her daughter is half-

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*                Case No. CV 07-06440-WDB

1    Filipino, and that she was not going to take it anymore.  In response, Wingnut stated to Plaintiff,

2    "you need to develop a thicker skin."

3    44.    As a result of all of Wingnut's outrageous rants and Berkel's and Cherne's

4    apparent acquiescence in and ratification of Wingnut's conduct, Plaintiff was emotionally

5    distraught, to wit, Plaintiff was weeping copiously and could not think straight.  She

6    immediately told Jerry Groce, (hereinafter, "Groce"), Berkel's General Superintendent on the

7    jobsite, that she was quitting and wanted her final paycheck, and the reasons therefor.  Groce

8    asked Plaintiff to calm down, have a cigarette, and allow him to contact some people to

9    investigate.  Plaintiff followed his direction, hopeful that at last someone in charge was going to

10    do the right thing.

11    45.    Shortly after Plaintiff's conversation with Groce, Plaintiff was approached by

12    Braverman, who introduced herself to Plaintiff as an HR Consultant whom Cherne brought in

13    because Berkel had no one on the jobsite to conduct an investigation.  Braverman told Plaintiff

14    that she would be conducting an objective investigation into Plaintiff's harassment complaint.

15    Braverman stated to Plaintiff that she, Braverman, is an attorney, and that she has taught law

16    courses.  Plaintiff asked Braverman for Wingnut's legal name, because Plaintiff had decided to

17    file a restraining order against him; however, Braverman told Plaintiff that she did not know his

18    legal name, but would let Plaintiff know after she interviewed him.  Braverman interviewed

19    Plaintiff regarding Plaintiff's allegations of sexual harassment against Scher.  Braverman did

20    not ask Plaintiff to write a statement; rather, Braverman took notes during the interview.  Also

21    present during the interview was Mike Sellars, whom Plaintiff believes to be a General Foreman

22    employed by Cherne.  During the interview, Plaintiff communicated to Braverman in detail her

23    allegations of sexual harassment against Scher.  Moreover, Plaintiff informed Braverman that

24    she had previously told Sellars that Wingnut offended her, and that Sellars' response to Plaintiff

25    was, "Get over it.  You want to know what Wingnut has said to *me*?"  When Plaintiff made this

26    statement, Braverman looked over at Sellars.  Plaintiff inferred from Braverman's body

27    language, that Braverman's reaction conveyed a message along the lines of, "You did?  What,

28    are you *nuts*?"  Sellars then apologized to Plaintiff, and stated that this was his first supervisorial

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*                    Case No. CV 07-06440-WDB

1    job, that he was just learning, and that he was used to women like Pam, (the other woman on

2    that jobsite working for Berkel at the time), who just goes along with everything.

3         46.    Later that same day, Braverman informed Plaintiff that Wingnut would be fired.

4    Braverman also told Plaintiff that she still did not know Wingnut's legal name, but assured

5    Plaintiff that he would be gone.  Over the ensuing days, Braverman attempted to ingratiate

6    herself with Plaintiff on a woman-to-woman basis, and repeatedly encouraged Plaintiff to meet

7    with Zuckerman, whom Braverman represented was a fair and decent man who would provide

8    Plaintiff with a fair resolution of the matter.  Plaintiff, however, was most concerned that

9    Braverman conduct a thorough investigation, and that Berkel take appropriate corrective action.

10   Plaintiff was in an emotionally fragile state, and had relied on Braverman's representations

11   related to her intention to conduct a thorough investigation, and her assessment of Zuckerman's

12   character.  Consequently, Plaintiff continued to request information from Braverman concerning

13   the progress and outcome of the investigation; however, despite repeated requests, Braverman

14   avoided responding to Plaintiff and ultimately informed Plaintiff that she had turned over all of

15   her files to Berkel, and did not retain any copies. On one occasion, Braverman telephone

16   Plaintiff, who was at home, on Plaintiff's cell phone.  Plaintiff inquired about the outcome of

17   Braverman's investigation.   Braverman proceeded to share with Plaintiff the following.

18   Braverman had been in a car accident.  The man who hit her did not even speak English.  She

19   was injured and hospitalized.  She had been pregnant, but lost the baby as a result of the

20   accident.  But she got over it, and got on with her life.  Braverman stated that she could get fired

21   for sharing this information, but that she believed that we, women, need to stick together; that

22   she, Braverman, was proud of Plaintiff, but that Plaintiff had to pull herself up by the bootstraps

23   and get past this.  Braverman again encouraged Plaintiff to call Zuckerman to resolve the

24   matter, and again gave Plaintiff Zuckerman's telephone number.    Plaintiff alleges that

25   Braverman intentionally deceived Plaintiff, to wit, Braverman never intended to conduct an

26   objective or thorough investigation; rather, she intended to conduct an investigation calculated

27   to minimize Cherne's and Berkel's potential liability under FEHA.

28

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA 94598
TEL: (925) 932-9455
FAX: (925) 932-9468

9

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*                    Case No. CV 07-06440-WDB

47.     On October 18, 2006, Plaintiff reported to work and was escorted to the jobsite via van in accordance with the regular routine, at approximately 6:30 a.m.. Routinely, everyone met at the lunch tent for a morning safety meeting. When Plaintiff exited the van in front of the lunch tent, Plaintiff saw Wingnut smoking a cigarette and laughing at her. Plaintiff looked at Steve Paine, Berkel's Superintendent, who was in the area, and Plaintiff shrugged, intending to convey, "What's going on? I thought he was out of here?" Paine responded to Plaintiff's shrug by saying, "Don't worry, he'll be out of here. We're getting him his check. Just go into your safety meeting." Plaintiff complied, and after the safety meeting, around mid-morning, Plaintiff was working in a hole below ground level, when she looked up and saw Wingnut standing over her, looking down at her, and laughing. Several other men were standing with him and laughing. Plaintiff was angry and frightened.

48.     At around 10:30 a.m., Scher finally left the jobsite. Later that day, Anthony, who was Berkel's safety officer, told Plaintiff that he was very sorry about the whole situation, and stated that the punishment did not fit the crime. Anthony informed Plaintiff that Scher was not fired, contrary to what Jessica Braverman and Paine had told Plaintiff. Anthony said that Berkel was transferring Scher to another jobsite in Southern California. Plaintiff was so angry and upset that she had to leave the worksite. Plaintiff found Paine because she needed a ride to her car. While Paine was driving Plaintiff to her car, she was crying uncontrollably, and told Paine that she just found out that they did not fire Wingnut, but that they transferred him. Furthermore, it appeared that everyone knew that Wingnut was being transferred, except Plaintiff. Plaintiff told Paine that it was humiliating, like a slap in the face, and that it conveyed that Scher's behavior was okay. Paine shrugged, and said he was sorry. Plaintiff later heard that Anthony was terminated by Berkel.

49.     After repeated unsuccessful attempts to find out what Braverman's investigation uncovered, Plaintiff finally called Zuckerman and met with him at the Elephant Bar in Concord. Over lunch, Zuckerman apologized to Plaintiff for Wingnut's actions. Zuckerman claimed that he did not then recall Wingnut's real name. Zuckerman stated to Plaintiff that he, Zuckerman, had told Groce that he, Zuckerman, thought Wingnut was trouble. Plaintiff stated to Zuckerman

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA 94598
TEL: (925) 932-9455
FAX: (925) 932-9468

10

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*                    Case No. CV 07-06440-WDB

1  that she wanted to see the results of the investigation, that she was concerned that no one on the

2  jobsite understood how hurtful the events had been to her, and that she was having nightmares

3  over it.  Plaintiff further stated that she did not know if she would ever be able to return to the

4  worksite as a pile driver.  Zuckerman inquired as to whether Plaintiff had thought about going

5  back to school, and inquired as to how much Plaintiff thought such an effort would cost.

6  Plaintiff had not thought along those lines, as she was still in a state of limbo with respect to the

7  outcome of the sexual harassment investigation and thinking about how she could return to the

8  jobsite.  Plaintiff told Zuckerman that she would like to be involved in sensitivity training

9  meetings to share her story so that people would understand how hurtful sexual harassment is.

10  Plaintiff made this request in part because she thought that if such meetings were conducted and

11  were well-received, then it would be easier for her to return to the jobsite without fear of

12  retaliation.  Zuckerman indicated that this could possibly be arranged, however, he stated that

13  Berkel intended to conduct sensitivity training in January, taught by professionals, so that it

14  would not be necessary for Plaintiff to do so.  Zuckerman pressed the issue of how much she

15  thought she would need to go back to school.   Plaintiff said she had no idea, but after continued

16  pressing from Zuckerman, she guessed $40,000.00.  Zuckerman told her he would arrange for

17  the payment, and told Plaintiff that they would draw up the paperwork and he arranged to meet

18  again with Plaintiff on November 8, 2006, this time at Scott's Restaurant in Jack London

19  Square, for the purpose of reviewing the paperwork.  At no time during her meeting with

20  Zuckerman on November 6, 2006, did Plaintiff know or understand that Zuckerman was

21  proposing a settlement and release of all claims.

22       48.    Plaintiff told Zuckerman that she wanted to review the outcome of Braverman's

23  investigation, and that she could not make any further decisions until she had done so.

24  Zuckerman told her he would send her Braverman's report.  The following day, Plaintiff

25  received via U.S. mail a letter from Zuckerman, which included a copy of Braverman's letter to

26  him.  A true and correct copy of Zuckerman's letter to Plaintiff is attached hereto as Exhibit A

27  and incorporated herein.   A true and correct copy of Braverman's letter to Zuckerman is

28

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA 94598
TEL: (925) 932-9455
FAX: (925) 932-9468

11

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*                    Case No. CV 07-06440-WDB

1   attached hereto as Exhibit B and incorporated herein.    On information and belief, Plaintiff

2   alleges that Braverman's letter to Zuckerman was not written until after October 23, 2006.

3       49.    As Plaintiff read and re-read Zuckerman's and Braverman's letters, Plaintiff

4   descended into further emotional distress, because she realized as she read Braverman's letter

5   that Braverman never intended to conduct a thorough and objective investigation into Plaintiff's

6   allegations of sexual harassment against Wingnut, despite Braverman's representations to her to

7   the contrary.  Moreover, Plaintiff felt insulted and angry because as she read Braverman's letter,

8   she realized that all of her interaction with Braverman, and her luncheon with Zuckerman the

9   previous day, were filled with deceit.  Plaintiff's realization of Braverman's and Zuckerman's

10  deceptions were akin to an epiphany:  Plaintiff was outraged, and thought to herself, "They were

11  playing me.  How dare they!"   Plaintiff continues to suffer severe emotional distress as a result

12  of Braverman's and Zuckerman's outrageous deceptions.

13      50.    Plaintiff filed a Workers' Compensation Claim for the emotional injuries she

14  suffered as a result of the illegal harassment.  Plaintiff alleges that Paine telephoned her and

15  informed her that her Workers' Compensation Claim was denied, and that she was terminated.

16  Moreover, Berkel's Workers' Compensation Insurance carrier, Zurich North America,

17  subsequently sent to Plaintiff a letter notifying her that her claim was denied.  A true and correct

18  copy of Zurich's letter to Plaintiff is attached as Exhibit C, and incorporated herein.

19      51.    Plaintiff alleges that after she met with Braverman, Groce approached her and

20  asked her if she would just drop the matter, and stated to Plaintiff that it would be a "he said, she

21  said" situation.  Moreover, Groce suggested to Plaintiff that she quit.

22      52.    Plaintiff alleges that Zuckerman and Braverman conspired to deceive Plaintiff by

23  falsely representing to her that they had met all of their legal obligations to her under FEHA,

24  including a false representation that Braverman's investigation into Plaintiff's complaint of

25  illegal harassment against Wingnut would be objective and complete.  Plaintiff further alleges

26  that Zuckerman and Braverman conspired to deceive Plaintiff in order to make the problem go

27  away with as little disruption to the construction project as possible, and in order to minimize

28  Berkel's potential civil liability under FEHA.

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

12

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*                    Case No. CV 07-06440-WDB

53.    Plaintiff alleges that Berkel, through Braverman, intentionally deceived Plaintiff by representing falsely that Scher was going to be fired.  Plaintiff alleges that in fact, when Braverman made that representation to Plaintiff, Zuckerman intended to transfer Scher to another Berkel jobsite in Southern California, and that Zuckerman did, in fact, do so.  Moreover, Plaintiff alleges that after Scher was transferred by Zuckerman to Southern California, Scher got a message to her through another union member, who told Plaintiff that Wingnut told him to tell her, "Ha, ha.  Thanks.  Now I'm getting more hours than ever."  …

54.    Plaintiff alleges that Wingnut engaged in sexually harassing conduct with another woman who was on the jobsite, a concrete inspector from the state of California.  To wit, Plaintiff alleges Wingnut made offensive comments to the woman, who subsequently complained; and Wingnut apologized to her.  Plaintiff saw Wingnut wearing a pink hardhat and pink peacock-feathered earrings when the incident occurred.  Furthermore, Plaintiff alleges that Wingnut's foreman, Doug, also was asked to apologize to the woman because he, too, had said something to the concrete inspector that she found offensive.

55.    Plaintiff alleges that Berkel intentionally breached its duty to prevent sexual harassment in the workplace.

56.    Plaintiff alleges that Berkel intentionally breached its duty to take effective corrective action in response to her complaint of sexual harassment against Scher.

57.    Plaintiff alleges that Cherne aided and abetted Berkel in its breach of their duty to conduct a thorough investigation into Plaintiff's complaints of sexual harassment.

58.    Plaintiff alleges that Braverman aided and abetted Berkel in its breach of their duty to conduct a thorough investigation into Plaintiff's complaints of sexual harassment.

59.    Plaintiff alleges that subsequent to Braverman's investigation, Cherne's Vice President of Human Resources, Cathy LaPoint, sent a letter and invoice to Zuckerman for Braaverman's services.

60.    On November 14, 2006, Plaintiff filed against Berkel and Zuckerman a complaint of discrimination under the provisions of FEHA.  On November 29, 2006, the DFEH issued to Plaintiff a notice of case closure and right-to-sue letter.  In filing this complaint of

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

13

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*                    Case No. CV 07-06440-WDB

1    discrimination and receiving a right-to-sue letter, Plaintiff has exhausted her administrative

2    remedies against Berkel pursuant to FEHA requirements.

3         61.    On September 20, 2007, Plaintiff filed against Cherne a complaint of

4    discrimination under the provisions of the FEHA. On September 24, 2007, the DFEH issued to

5    Plaintiff a notice of case closure and right-to-sue letter.  In filing this complaint of

6    discrimination and receiving a right-to-sue letter, Plaintiff has exhausted her administrative

7    remedies against Cherne pursuant to FEHA requirements.

8         62.    On October 19, 2007, Plaintiff filed against Braverman-Smith, as an individual, a

9    complaint of discrimination under the provisions of FEHA.  On October 22, 2007, the DFEH

10   issued to Plaintiff a notice of case closure and right-to-sue letter.  In filing this complaint of

11   discrimination and receiving a right-to-sue letter, Plaintiff has exhausted her administrative

12   remedies against Braverman-Smith pursuant to FEHA requirements.

13        63.    On October 19, 2007, Plaintiff filed against Braverman Mediation & Consulting,

14   complaint of discrimination under the provisions of FEHA.  On October 22, 2007, the DFEH

15   issued to Plaintiff a notice of case closure and right-to-sue letter.  In filing this complaint of

16   discrimination and receiving a right-to-sue letter, Plaintiff has exhausted her administrative

17   remedies against Braverman Mediation & Consulting, pursuant to FEHA requirements.

18        64.    On September 19, 2007, Plaintiff filed against Scher a complaint of

19   discrimination under the provisions of FEHA.  On September 20, 2007, the DFEH issued to

20   Plaintiff a notice of case closure and right-to-sue letter.   In filing this complaint of

21   discrimination and receiving a right-to-sue letter, Plaintiff has exhausted her administrative

22   remedies against Scher pursuant to FEHA requirements.

23   **FIRST CAUSE OF ACTION**

24   **[SCHER – SEXUAL HARASSMENT  – GOV'T CODE § 12940, subds. (j)(1, (3)]**

25        65.    Plaintiff incorporates paragraphs 1-64 as if fully set forth.

26        66.    Plaintiff brings this action against Scher and alleges that Scher, as an individual,

27   subjected her to harassment because she is a woman, causing a hostile or abusive work

28   environment, pursuant to Gov't Code §§ 12940(j)(1), (3).

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

14

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*         Case No. CV 07-06440-WDB

67.    Plaintiff alleges that Scher's harassing conduct was so severe, widespread, or persistent that a reasonable woman in Plaintiff's circumstances would have considered the work environment to be hostile or abusive.    Scher's conduct as alleged hereinabove constituted unlawful sexual harassment, and rendered plaintiff's employment environment hostile.

68.    Plaintiff alleges that she considered the work environment to be hostile or abusive.

69.    Plaintiff alleges that she was harmed by Scher's conduct.

70.    Plaintiff alleges that Scher's conduct was a substantial factor in causing Plaintiff's harm.

71.    As a direct, foreseeable, and proximate result of Scher's illegal acts, Plaintiff has suffered substantial losses in earnings and job benefits, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and anger, all to Plaintiff's damage in an amount in excess of $ 25,000, the precise amount of which will be proven at trial.  Plaintiff claims this amount along with attorneys fees and costs, and all other relief available pursuant to law.

## SECOND CAUSE OF ACTION

### [SCHER: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS –

### CIVIL CODE § 1714]

72.    Plaintiff incorporates paragraphs 1-71 as if fully set forth.

73.    Plaintiff brings this action against Scher for Intentional Infliction of Emotional Distress and alleges that Scher's conduct caused her to suffer severe emotional distress.

74.    Plaintiff alleges that Scher's conduct as described hereinabove was outrageous.

75.    Plaintiff alleges that Scher intended to cause Plaintiff emotional distress, or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was present when the conduct occurred.

76.    Plaintiff alleges that Scher's conduct was a substantial factor in causing Plaintiff's severe emotional distress.

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

15

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*                                    Case No. CV 07-06440-WDB

77.    Plaintiff alleges that she that she suffered severe emotional distress, including suffering, anguish, nervousness, anxiety, worry, shock, and humiliation, the extent of which is not fully known at this time, and the amount of damages caused by Scher's conduct is not yet fully ascertained but in an amount in excess of $25,000, the precise amount to be proven at the time of trial.  Plaintiff claims this amount together with prejudgment interest pursuant to <u>Civil Code § 3287</u> and pursuant to any other provision of law providing for prejudgment interest.

**THIRD CAUSE OF ACTION**
**[BERKEL: FAILURE TO TAKE IMMEDIATE AND APPROPRIATE ACTION TO**
**INVESTIGATE AND CORRECT SEXUAL HARASSMENT –**
**GOV'T CODE §§ 12920, 12940(j)(1)]**

78.    Plaintiff incorporates paragraphs 1-77 as if fully set forth.

79.    Plaintiff brings this action pursuant to FEHA, <u>Gov. Code §§ 12940</u> subd. (j)(1), and the corresponding regulations of the California Fair Employment and Housing Commission. Further, Plaintiff brings this action pursuant to Gov't § 12920, and alleges that Berkel violated the public policy embodied in Gov't § 12920, which provides, in pertinent part:

> It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of … sex.
>
> It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment for these reasons foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advancement, and substantially and adversely affects the interest of employees, employers, and the public in general.
> …
> It is the purpose of this part to provide effective remedies that will eliminate these discriminatory practices.
>
> This part shall be deemed an exercise of the police power of the state for the protection of the welfare, health, and peace of the people of this state.

80.    Plaintiff alleges that Berkel knew or should have known of Scher's illegal conduct and failed to take timely steps to conduct an objective investigation in order to prevent and

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA 94598
TEL: (925) 932-9455
FAX: (925) 932-9468

16

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*        Case No. CV 07-06440-WDB

1    correct Scher's unlawful conduct, thereby tacitly approving, acquiescing in, and ratifying Scher's

2    sexual harassment of Plaintiff.

3    81.    Plaintiff alleges that the harassing conduct was so severe, widespread, or

4    persistent that a reasonable woman in Plaintiff's circumstances would have considered the work

5    environment to be hostile or abusive.

6    82.    Plaintiff alleges that she considered the work environment to be hostile or

7    abusive.

8    83.    Plaintiff alleges that she was harmed by Scher's conduct.

9    84.    Plaintiff alleges that Scher's conduct was a substantial factor in causing Plaintiff's

10   harm.

11   85.    As a direct, foreseeable, and proximate result of Berkel's illegal acts, Plaintiff has

12   suffered substantial losses in earnings and job benefits, and has suffered and continues to suffer

13   humiliation, embarrassment, mental and emotional distress, and anger, all to Plaintiff's damage

14   in an amount in excess of $ 25,000, the precise amount of which will be proven at trial. Plaintiff

15   claims this amount along with attorneys fees and costs, and all other relief available pursuant to

16   law. Plaintiff claims this amount together with prejudgment interest pursuant to <u>Civil Code §</u>

17   <u>3287</u> and pursuant to any other provision of law providing for prejudgment interest.

18   86.    Berkel committed the acts described in this complaint oppressively, fraudulently,

19   and maliciously, entitling Plaintiff to an award of punitive damages against Berkel in an amount

20   appropriate to punish and make an example of Berkel.

21   **FOURTH CAUSE OF ACTION**

22   **[BERKEL:  FAILURE TO TAKE ALL REASONABLE STEPS NECESSARY TO**

23   **PREVENT DISCRIMINATION AND HARASSMENT FROM OCCURRING –**

24   **GOV'T CODE §§ 12920, 12940(k), 12950 ET SEQ.]**

25   87.    Plaintiff incorporates paragraphs 1-86 as if fully set forth.

26   88.    Plaintiff brings this action against Berkel for failure to prevent harassment

27   pursuant to <u>Gov't Code § 12940</u>, subd.(k), Gov't Code § 12950 et seq., and alleges that Berkel

28   breached its duty to prevent  harassment based on sex/gender, and pursuant to Gov't Code §

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

17

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*          Case No. CV 07-06440-WDB

1  12920.  Further, Plaintiff brings this action pursuant to Gov't § 12920, and alleges that Berkel

2  violated the public policy embodied in Gov't § 12920.

3      89.    Plaintiff alleges that she was harmed as a result of the harassment and alleges that

4  Berkel's breach of its duty to take reasonable steps to prevent harassment was a substantial factor

5  in causing Plaintiff's harm.

6      90.    As a direct, foreseeable, and proximate result of Berkel's illegal acts, Plaintiff has

7  suffered substantial losses in earnings and job benefits, and has suffered and continues to suffer

8  humiliation, embarrassment, mental and emotional distress, and anger, all to Plaintiff's damage

9  in an amount in excess of $ 25,000, the precise amount of which will be proven at trial.  Plaintiff

10  claims this amount along with attorney's fees and costs, and all other relief available pursuant to

11  law. Plaintiff claims this amount together with prejudgment interest pursuant to <u>Civil Code §</u>

12  <u>3287</u> and pursuant to any other provision of law providing for prejudgment interest.

13      91.    Berkel committed the acts described in this complaint oppressively, fraudulently,

14  and maliciously, entitling Plaintiff to an award of punitive damages against Berkel in an amount

15  appropriate to punish and make an example of Berkel.

16  ## <u>FIFTH CAUSE OF ACTION</u>

17  ## [CHERNE:  AIDING AND ABETTING BREACH OF DUTY TO CONDUCT AN

18  ## OBJECTIVE THOROUGH INVESTIGATION INTO ALLEGATIONS OF SEXUAL

19  ## HARASSMENT - GOV'T CODE §§ 12920, 12940(j)(1), (i)]

20      92.    Plaintiff incorporates paragraphs 1-91 as if fully set forth.

21      93.    Plaintiff brings this action against Cherne pursuant to <u>Gov't Code § 12940</u>, subd.

22  (i), which prohibits any person from aiding and abetting any of the acts forbidden under FEHA.

23  Further, Plaintiff alleges that in so doing, Cherne violated the public policy embodied in <u>Gov't</u>

24  <u>Code § 12920</u>.  Plaintiff alleges that Cherne intended to help Berkel violate its duty to conduct an

25  objective thorough investigation into Plaintiff's allegations of sexual harassment as required

26  under FEHA.  Plaintiff alleges that Cherne aided and abetted Berkel in creating the appearance

27  that the investigation into Plaintiff's allegations of sexual harassment against Scher would be

28  objective.  Plaintiff alleges that Braverman was acting as Cherne's agent for purposes of liability

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

18

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*                    Case No. CV 07-06440-WDB

under the doctrine of respondeat superior, when Cherne sent her to assist Berkel in managing Plaintiff's complaint of harassment against Scher, but that neither Berkel, Cherne, nor Braverman ever intended that the investigation would be objective, neutral, or thorough. Plaintiff alleges that Braverman intentionally gave Plaintiff the impression that she would conduct a neutral and thorough investigation, and ingratiated herself with Plaintiff to gain Plaintiff's trust and confidence, in order to minimize Berkel's liability under FEHA.

94.    Plaintiff alleges that she was harmed as a result of Cherne's actions in aiding and abetting Berkel's failure to conduct an objective thorough investigation into Plaintiff's allegations of sexual harassment.

95.    Plaintiff alleges that Cherne's actions in aiding and abetting Berkel's failure to conduct an objective thorough investigation into Plaintiff's allegations of sexual harassment was a substantial factor in causing Plaintiff's harm.

96.    As a direct, foreseeable, and proximate result of Cherne's illegal acts, Plaintiff has suffered substantial losses in earnings and job benefits, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and anger, all to Plaintiff's damage in an amount in excess of $ 25,000, the precise amount of which will be proven at trial. Plaintiff claims this amount along with attorney's fees and costs, and all other relief available pursuant to law. Plaintiff claims this amount together with prejudgment interest pursuant to Civil Code § 3287 and pursuant to any other provision of law providing for prejudgment interest.

97.    Cherne committed the acts described in this complaint oppressively, fraudulently, and maliciously, entitling Plaintiff to an award of punitive damages against Cherne in an amount appropriate to punish and make an example of Cherne.

### SIXTH CAUSE OF ACTION

### [BRAVERMAN: AIDING AND ABETTING BREACH OF DUTY TO CONDUCT AN OBJECTIVE AND THOROUGH INVESTIGATION INTO ALLEGATIONS OF SEXUAL HARASSMENT - GOV'T CODE §§ 12920, 12940, subds. (i)]

98.    Plaintiff incorporates paragraphs 1-97 as if fully set forth.

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA 94598
TEL: (925) 932-9455
FAX: (925) 932-9468

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*                    Case No. CV 07-06440-WDB

99.    Plaintiff brings this action against Braverman pursuant to FEHA, <u>Gov. Code</u> <u>§12940(i)</u>, and the corresponding regulations of the California Fair Employment and Housing Commission. for aiding and abetting Berkel in its breach of its duty to conduct an objective thorough investigation into Plaintiff's allegations of sexual harassment against Scher.  Plaintiff alleges that Braverman represented to Plaintiff that she is an attorney, that she was sent by Cherne to conduct an objective thorough investigation into Plaintiff's allegations of sexual harassment, but that Braverman never intended to do so; rather, Braverman intended to manage Plaintiff and her allegations of sexual harassment in a manner calculated to minimize Berkel's potential liability under FEHA.  Plaintiff alleges that Braverman acted with scienter: her representations to Plaintiff were deceitful.  Further, Plaintiff alleges that in so acting, Braverman violated the public policy embodied in Gov't Code § 12920: in aiding and abetting Berkel's breach of its duty to conduct an objective thorough investigation, Braverman acted with reckless disregard for Plaintiff's civil rights under FEHA pursuant to Gov't Code § 12920.

100.    As a direct, foreseeable, and proximate result of Braverman's illegal acts, Plaintiff has suffered substantial losses in earnings and job benefits, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and anger, all to Plaintiff's damage in an amount in excess of $ 25,000, the precise amount of which will be proven at trial. Plaintiff claims this amount along with attorney's fees and costs, and all other relief available pursuant to law.  Plaintiff claims this amount together with prejudgment interest pursuant to <u>Civil Code § 3287</u> and pursuant to any other provision of law providing for prejudgment interest.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

1.    for general damages according to proof;

2.    for special damages according to proof;

3.    for incidental and consequential damages according to proof;

4.    for punitive damages;

5.    for attorney fees and costs;

6.    for prejudgment interest on all amounts claimed;

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*    Case No. CV 07-06440-WDB

1    7.    for a court order requiring that Defendants remove all negative performance

2 information from Plaintiff's personnel file and limit future job reference disclosures to dates of

3 employment and job title, only;

4    8.    for any other and further relief that the court considers proper.

5                    **DEMAND FOR JURY TRIAL**

6    Plaintiff hereby demands a trial by jury.

7    DATED: March 11, 2008              LAW OFFICES OF PATRICE R. ZABELL

8

9                        By:    /s/ Patrice R. Zabell

10                            Patrice R. Zabell
                             Attorney for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA 94598
TEL: (925) 932-9455
FAX: (925) 932-9468

21
FIRST AMENDED VERIFIED COMPLAINT
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*                    Case No. CV 07-06440-WDB

# EXHIBIT A



www.berkelandcompany.com

AUGER PRESSURE GROUTED PILING I DISPLACEMENT PILING I DRIVEN PILING I PRESSURE GROUTING I SHEETING & SHORING I MICRO PILING

Reply To: Regional Office
Berkel & Company Contractors, Inc.
855 Folsom Street, Suite 703
San Francisco, CA 94107
(415) 495-3627 ● (415) 495-2746 fax

Winifred Gibson-Jones
381 Arthur Rd. #2C
Martinez, CA  94553

November 7, 2006

Dear Ms. Gibson-Jones:

This is to advise you that I reviewed your complaint of harassment by Mr. Greg Scher and also reviewed the preliminary investigation prepared by Chrene Contracting Corporation (a copy of which is attached).

Although the investigation by Chrene was inclusive, based on my review of this information, and Berkel and Company Contractors, Inc. policies prohibiting harassment based on sex (a copy of which is available for your review should you so request), I concluded that Mr. Scher's behavior towards you was unacceptable and not in compliance with Berkel's anti-harassment policies and that corrective action was necessary. I can inform you of the following:

1.  Mr. Scher is no longer employed with Berkel and will not in the future be employed with the company.
2.  Berkel intends to conduct anti-harassment training for all supervisory personnel at its Martinez project site as soon as staffing increases, which is expected to be in February 2007.

The company regrets the difficulties you experienced and has decided to pay you full salary for your employment with Berkel as a pile drive at the Tosoro Martinez project site through October 27, 2006.  Please note that the project is rapidly concluding and numerous employees, including other pile drivers, have been laid-off over the last few weeks.

Please be assured that Berkel maintains a no retaliation policy (a copy of which is available for your review should you so request).  In no manner does or will your complaint of harassment impact your eligibility to again work for Berkel.  In fact, we invite you to come back and work for Berkel as staffing again increases and will consider you for employment as soon as you let us know of your interest.

Please do not hesitate to contact me, or your Union representative, if we can be of any additional assistance to you or should you have questions.

Sincerely,

Brian Zuckerman
Assistant West Coast Regional Manager
Berkel and Company Contractors, Inc.

P.S.:  I have transmitted your request for a lump sum payment to corporate and will let you know this Thursday if it has been approved.

cc:    Pat Karinen, NCCRC Senior Field Rep.

2649 S. 142nd Street, P.O. Box 335 ● Bonner Springs, Kansas 66012 - **(913) 422-5125** - (913) 441-0402 fax - Email: info@berkelapg.com

KANSAS CITY - ATLANTA - BALTIMORE - CHICAGO - HOUSTON - LOUISVILLE - ORLANDO - SAN FRANCISCO - WASHINGTON DC
*"An Equal Opportunity Employer"*

# EXHIBIT B

# Jessica A. Braverman-Smith
Human Resource Consultant
Cherne Contracting Corporation
P.O. Box 975
Minneapolis, Minnesota  55440

October 19, 2006

Confidential

Brian R. Zuckerman
Assistant Regional Manager
Berkel & Company Contractors, Inc.
855 Folsom Street #703
San Francisco, CA  94107-1185

Re:  Alleged Incident at Tosoro October 17, 2006

Dear Mr. Zuckerman:

As you know, at approximately 1:00 pm PDT on October 17, I was called by Cherne's
VP of Human Resources alerting me that an alleged sexual harassment incident had
occurred at the Tosoro Martinez site recently that day.  I immediately phoned you to
advise of same and to request that Berkel do an immediate investigation to resolve any
potential incident immediately.

You requested, and I agreed to go immediately to the site to assist you in an immediate
and neutral investigation.  I arrived on the site approximately 21 minutes after I received
the initial call.

You and I agreed since Cherne was the outside party in this matter, it made sense that
Cherne could do the best neutral investigation.

While I waited for your arrival, I began the investigation.  Although Berkel is continuing
its investigation in this matter as I write this letter, I thought it would be helpful to know
what my limited investigation yielded so far.

I spoke to the alleged victim ( Party 1), a Ms. Winifred Gibson-Jones, I also spoke to the
alleged harasser (Party 2), a Mr. Greg Scher.  Additionally, I spoke to: Jerry Groce,
"Groce", Douglas C. Williams, and other Berkel employees.

1

Party 1 relayed in essence that approximately 3 weeks prior, Party 2 made an offensive and sexual remark to her in the presence of other Berkel employees. Party 1 stated that at that time she felt that she could handle the situation and wanted to confront Party 2 herself without the intervention of Berkel Management. In fact, Party 1 admitted that she specifically asked her assistant manager (who did not witness the incident) to not do anything about the situation or tell anyone- as Party 1 wanted to handle it exclusively.

The Assistant Manager, corroborated Party 1's statements that she wanted to confront Party 2 herself and had been told by Party 1 that the situation had been handled.

It appeared that the incident that had taken place 3 weeks prior had been successfully addressed by Party 1.

Party 1 also relayed that just several hours earlier (October 17) party 2 made a racial remark in her presence that she found offensive. Party 1 said that the remark allegedly made today "broke the camel's back" and that is why she wanted to now report it to Berkel Management.

When I spoke to Party 2, he denied making any sexual or racial statements. During my interview with Party 2 it seemed that his understanding and his sensitivity to what is considered "offensive" and "unprofessional" was limited. He stated that he had been in Construction a long time and felt people had the Constitutional Right to say what they wished to say. Party 2 was advised by Berkel Management present during his interview that he was expected to keep his language professional at all times while on the job. Party 2 agreed.

When I spoke to the other Berkel employees, it appeared that one employee who was close to Party 1, corroborated her version of the remarks made 3 weeks ago by Party 2 in the presence of Party 1. This employee did not hear the alleged racial remark made on that day. Other employees were not able to corroborate one way or the other the exact remarks alleged to have been said. In fact, one employee told a completely different version of the alleged racial remark about Filipino people, stating "all that was asked was whether I was Filipino."

When I spoke to the on site Manager, Jerry Groce, it became very clear that until a few hours prior, he had no knowledge about the situation. When he saw that Party 1 was upset that day, he asked her what was going on. Groce immediately notified Berkel Management.

While Berkel continued its investigation, Berkel Management told me it had decided to remove Party 2 from the site. That decision was made on October 17.

2

The next day, October 18, I called Party 1 at the site to see how she was doing, as I had been advised by Berkel that Party 2 was no longer working for Berkel on the site pending its continued investigation. Party 1 told me that she was doing fine and was working. Several minutes later, Party 1's business agent stopped by to talk with me and he told me that Party 1 appreciated my follow up call.

I told the Business Agent that Cherne was not involved in this matter. I explained that I had been asked by Berkel to do a neutral investigation. I shared with the Business Agent briefly that I had not completed my investigation, or my report. I also shared with the Business Agent that my preliminary investigation so far seemed to suggest that Party 1 asked that she be able to confront Party 2 herself 3 weeks ago and that all concerned had been told that it had been successfully handled. The business agent agreed that Party 1 thought she could handle it, and that part of her emotions, in his opinion, might be because she felt that she had failed herself.

In the afternoon of October 18, I was out at the site with our Safety department; I saw Party 1 and again asked her how she was doing. She said she was doing fine but she was worried about any "repercussions" for coming forward. I asked her directly if there had been any repercussions so far, and she said there had not. She asked for my business card, which I gave her, and I told her if she had any further concerns she could call me.

At the time I am writing this report, I have no knowledge of either Party 1 or Party 2's history with Berkel. Further, I do not know what final decisions, if any, Berkel has reached regarding the outcome of this incident.

I believe Cherne has now correctly turned this matter completely back to Berkel for further handling. This concludes my involvement in this matter.

Please let me know if I can answer any questions regarding the foregoing.

Very Truly Yours,

Jessica A. Braverman

cc:  Cathy C. LaPoint, VP of Human Resources, Cherne Contracting Corporation

3

# EXHIBIT C



November 13, 2006


Winifred Gibson
381 Arthur Road SP. 2C
Martinez, CA  94553


RE:  Claim #:        2010154257-001
     Insured:        Berkel & Company Contractors, Inc.
     Date of Loss:   10/16/06
     Claimant:       Winifred Gibson

Zurich North America

Claims

P.O. Box 7774
San Francisco, CA
94120-7774

Telephone (800) 701-4926
Fax (415) 538-7150
http://www.zurichna.com

Dear Winifred Gibson:

We recently reviewed your claim at length. After careful consideration of
the information available to date, we deny liability for your alleged pyche/
psychological/ psychiatric injury as you were not employed for more than
6 months with Berkel & Company Contractors, Inc. Additionally we lack
medical and factual evidence to support a compensable injury to your
psyche. Lastly, we invoke all expressed or implied defenses under state
and federal law and reserve the right to reverse our decision upon receipt
of additional information.

We must respectfully deny payment of any medical expenses due to this
problem. It is our suggestion that all currently pending medical bills be
submitted to the appropriate group insurance carrier for further handling
and payment. Please call me if you have questions.

If you disagree with our determination, you also have the right to request a
hearing at the Worker's Compensation Appeals Board within one year of
filing your claim for worker's compensation benefits. If you want further
information on this issue or any others, you may contact the local state
Information and Assistance office by calling (see attachment) or you may
receive recorded information by calling 1-800-736-7401.

You may also consult an attorney of your choice. Should you decide to be
represented by an attorney, you may or may not receive a larger award,
but, unless you are determined to be ineligible for an award, the attorney's
fee will be deducted from any award you might receive for disability
benefits. The decision to be represented by an attorney is yours to make,

Very truly yours,
Zurich American Insurance Company

Brent Rockwood
CLAIM CASE MANAGER
(916) 636-5234

Cc:

November 13, 2006
Page 3

| | | |
|---|---|---|
| **Anaheim, 92801**<br>1661 No. Raymond avenue, suite 200<br>(714) 738-4038 | **Bakersfield, 93301**<br>1800 30th street, suite 100<br>(661) 395-2514 | **Eureka, 95501-0421**<br>100 "H" street, room 201<br>(707) 441-5723 |
| **Fresno, 93721-2280**<br>2550 Mariposa street, room 2035<br>(559) 445-5355 | **Grover Beach, 93433-2261**<br>1562 Grand avenue<br>(805) 481-3296 | **Goleta, 93117**<br>6755 Hollister avenue, room 100<br>(805) 968-4158 |
| **Long Beach, 90802-4460**<br>300 Oceangate street, 3rd floor<br>(562) 590-5240 | **Los Angeles, 90013**<br>320 W. 4th street, 9th floor<br>(213) 576-7389 | **Oakland, 94612**<br>1515 Clay street. 6th floor<br>(510) 622-2861 |
| **Oxnard 93030**<br>2220 E. Gonzales road, suite 100<br>(805) 485-3528 | **Pomona, 91768**<br>435 W. Mission Blvd. #300<br>(909) 623-8568 | **Redding, 96001-2796**<br>2115 Akard, room 21<br>(530) 225-2047 |
| **Riverside, 92501**<br>3737 Main street, room 300<br>(951) 782-4347 | **Sacramento, 95825**<br>2424 Arden Way, suite 230<br>(916) 263-2741 | **Salinas, 93906-2204**<br>1880 North Main street, suite 100<br>(831) 443-3058 |
| **San Bernardino, 92401**<br>464 W. Fourth street, suite 239<br>(909) 383-4522 | **San Diego, 92102-4402**<br>7575 Metropolitan Drive, suite 202<br>(619) 767-2082 | **San Francisco, 94102**<br>455 Golden Gate avenue, 2nd floor<br>(415) 703-5020 |
| **San Jose, 95113**<br>100 Paseo de San Antonio, room 240<br>(408) 277-1292 | **Santa Ana, 92701-4701**<br>28 Civic Center Plaza, room 451<br>(714) 558-4597 | **Santa Monica, 90405**<br>2701 Ocean Park Blvd, suite 222<br>(310) 452-1188 |
| **Santa Rosa, 95404**<br>50 "D" street, room 430<br>(707) 576-2452 | **Stockton, 95202**<br>31 East Channel street, room 450<br>(209) 948-7980 | **Van Nuys, 91401-3373**<br>6150 Van Nuys Blvd, room 105<br>(818) 901-5367 |

Information & Assistance Unit - district offices