UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINIFRED L. GIBSON-JONES,<br><br>    Plaintiff,<br><br>v.<br><br>BERKEL & COMPANY<br>CONTRACTORS, INC., et al.<br><br>    Defendants.<br>_____/ | No. C 07-6440 WDB<br><br>ORDER FOR REASSIGNMENT;<br>REPORT AND RECOMMENDATION<br>RE MOTION TO DISMISS AND<br>MOTION TO REMAND |

**INTRODUCTION**

Two of the six originally named Defendants removed this sexual harassment action from Contra Costa County Superior Court. Four Defendants now move to dismiss the claims against them. Plaintiff moves to remand the action to state court.

Because not all Defendants have appeared, this Court cannot secure consent as required by 28 U.S.C. § 636(c). Accordingly, after considering the briefs of the parties and hearing oral argument on February 27, 2008, we make the following Report and Recommendation and we ORDER the Clerk of the Court to randomly reassign this action to a District Judge.

Preliminarily, we note that after the hearing on this matter and pursuant to the undersigned's Interim Order of February 28, 2008, Plaintiff amended her Complaint to dismiss all causes of action against Defendant Brian Zuckerman, all causes of

1  action against Defendant Braverman Mediation and Consulting ("BMC"), and the
2  causes of action against Jessica Braverman for promissory fraud and intentional
3  infliction of emotional distress.  Plaintiff retained her claim against Ms. Braverman for
4  aiding and abetting Berkel's alleged violation of California's Fair Employment and
5  Housing Act ("FEHA"), Cal. Govt. Code §§ 12920, 12940 (i), (j)(1), but amended the
6  claim to clarify that she is alleging that Braverman aided and abetted Berkel's breach
7  of the duties to investigate fairly and take appropriate corrective action in response to
8  allegations of sexual harassment, and not that Braverman aided and abetted the sexual
9  harassment itself (as allegedly committed by defendant Gregory Scher).   The
10 defendants remaining in this action are:  Gregory A. Scher, Berkel & Company
11 Contractors, Inc., Cherne Contracting Corporation, and Jessica Braverman.
12     In an earlier filing (after defendants filed their motion to dismiss), Plaintiff
13 withdrew the Eighth Cause of action of her original complaint – the cause of action
14 that purported to assert a claim against Defendant Berkel for breach of the implied
15 covenant of good faith and fair dealing.  We believe that claim would have been
16 preempted by Section 301 of the Labor Management Relations Act.  *See* Order Re
17 Motion to Dismiss, Filed February 15, 2008.
18     The changes that Plaintiff has made in her complaint have the effect of mooting
19 all but one of the pending motions to dismiss – the motion by Ms. Braverman, joined
20 by other defendants, to dismiss all claims against her.  For reasons we make clear
21 below, we RECOMMEND that the District Court DENY the motion to dismiss the
22 one remaining claim against Ms. Braverman.
23     We also RECOMMEND that the District Court GRANT Plaintiff's motion to
24 REMAND this case to state court.
25 ///
26 ///
27 ///
28

## BACKGROUND

On September 13, 2006, Defendant Berkel & Company Contractors ("Berkel") hired Plaintiff Winifred L. Gibson-Jones as a pile driver on its construction project at the Tesoro Martinez refinery. Plaintiff alleges that she is a member of the Pile Drivers, Divers, Carpenters, Bridge, Wharf and Dock Builders Local Union #34, and was employed by Berkel pursuant to a labor agreement between the Union and Berkel. Plaintiff alleges that during her second and third weeks at work, another Berkel employee, Defendant Gregory Scher, a.k.a., "Wingnut," made sexually offensive comments and gestures directed toward her in the presence of other employees, including her superintendent and foreman. Plaintiff reported the harassment to her superintendent, but told him that she believed she could handle the matter on her own.

On October 16, 2006, Plaintiff alleges that Scher made vulgar comments about various ethnic groups (including her own) in front of Plaintiff and other Berkel employees. Plaintiff broke down emotionally and immediately told Berkel's General Superintendent, Jerry Groce, that she was quitting, and the reasons she intended to do so. Groce told Plaintiff that he would contact people to investigate. Within hours, Plaintiff was approached by Defendant Jessica Braverman. Ms. Braverman introduced herself as an HR consultant whom Defendant Cherne Construction Company, another construction contractor at the Tesoro Martinez Refinery site, brought in because Berkel itself did not have anyone on site to do an investigation.

According to Plaintiff, Ms. Braverman told Plaintiff that she would conduct an objective investigation into Plaintiff's harassment complaint. Plaintiff asked for "Wingnut's" legal name in order to file a restraining order against him, but Ms. Braverman told her that she did not know his legal name. Later that day, Ms. Braverman informed Plaintiff that Wingnut would be fired, and that she still did not know his legal name. Ms. Braverman encouraged Plaintiff to meet with Defendant Brian Zuckerman, a Berkel supervisor, but did not otherwise disclose to Plaintiff the

1  status or content of her investigation.

2      Plaintiff alleges that days later, after repeated but unsuccessful attempts to learn
3  the results of Ms. Braverman's investigation, Plaintiff met with Mr. Zuckerman, who
4  gave her a copy of a letter from Ms. Braverman.  *See* Defs' Request for Judicial
5  Notice, Ex. A.

6      Plaintiff alleges that Braverman made knowingly deceitful representations to
7  her during their interactions, and that Braverman never intended to conduct a thorough
8  investigation, but, instead, intended to develop a factual scenario that would minimize
9  Cherne's and Berkel's liability under FEHA.

10      Plaintiff filed her original Complaint in Contra Costa County Superior Court on
11  November 29, 2007.  On December 21, 2007, Defendant Berkel and former
12  Defendant Zuckerman filed a notice of removal to this Court on two grounds: (1) that,
13  by operation of law (preemption), the Complaint raised federal questions governed by
14  the Labor Management Relations Act ("LMRA"), and (2) diversity of citizenship.
15  None of the defendants had been served with the Complaint at the time of removal.

16      On January 10, 2008, Defendants Berkel and Braverman, and former
17  Defendants Zuckerman and BMC, filed a motion to dismiss.  As part of her opposition
18  to the motion, Plaintiff moved to remand this action for lack of federal subject matter
19  jurisdiction.  Defendants contend that the Court should not consider a request for
20  remand unless and until Plaintiff files a separate, duly noticed motion seeking that
21  form of relief.  While we agree that the professionally appropriate way to seek remand
22  is by filing a separate motion, we do not believe that, in the circumstances here
23  presented, it would be consistent with Rule 1 of the Federal Rules of Civil Procedure
24  to require Plaintiff to follow that formal course.  Defendants have had plenty of notice
25  and ample opportunity to be heard on this issue – so they cannot persuasively
26  complain that a decision to address the remand question in this setting exposes them to
27  some unfairness.  We also note that a federal district court is expected to raise and
28  address the issue of subject matter jurisdiction <u>sua sponte</u> if the

court identifies a substantial basis for questioning whether it has such jurisdiction. *See e.g., Sparta Surgical Corp. v. Nat'l Ass'n. Sec. Dealers, Inc.*, 159 F.3d 1209, 1211 (9th Cir. 1998). For these reasons, we recommend that the parties not be required to file separate additional papers addressing the remand issues.

On February 27, 2008, the undersigned held a hearing during which the parties and the Court addressed at length both the motion to dismiss and the request for remand.

## DISCUSSION

### I.   Subject Matter Jurisdiction

#### A.   Federal Question

The Complaint that defendants removed to this Court in December of last year included a claim against Defendant Berkel for allegedly breaching an implied covenant of good faith and fair dealing whose source, according to Plaintiff, was the Master Labor Agreement between Associated General Contractors of California, Inc. and Pile Drivers, Divers, Carpenters, Bridge, Wharf and Dock Builders Local Union #34. *See* Complaint at p. 18, ¶ 121. As noted, above, this claim would have been preempted by Section 301 of the Labor Management Relations Act. *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) (state law claims based on a collective bargaining agreement "are purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of §301"). Accordingly, it was proper to remove the case, as originally pled, on the ground that, by operation of law, it presented a federal question. Having had subject matter jurisdiction at the time the action was removed, this Court retains discretion to hear the case even after the plaintiff has withdrawn the only claim that arose under federal law. *See e.g., Bale v. General Telephone Co. Of California*, 795 F.2d 775, 778 (9th Cir. 1986) (when a case is properly removed, the federal court does not lose subject matter jurisdiction upon subsequent dismissal of the federal claim).

At this juncture, there are two alternative bases on which this case might properly remain in federal court. The Court, in its discretion, may elect to retain jurisdiction over the pendent state law claims (despite dismissal of the federal claim). *See Albingia Versicherungs A.G. v. Schenker Intern, Inc.*, 344 F.3d 931, 936 (9th Cir. 2003). Or, *if* there is completeness of diversity of citizenship between the Plaintiff and all of the Defendants, and if none of the Defendants was joined fraudulently for purposes of defeating diversity, then the Court would be *required* to retain the claims. 28 U.S.C. § 1332; *See e.g., Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 553 (2005).

For two converging reasons, we RECOMMEND that the District Court not exercise its discretion to retain jurisdiction over the pendent state law claims now that no federal question remains in the case. Virtually all of the remaining state law claims will be controlled by a complex and (in some measure) sui generis statutory scheme that only California courts can authoritatively construe: Cal. Govt. Code §§ 12920, 12940 (i), (j)(1) [FEHA]. Moreover, the parties have not yet had an opportunity to do anything in this court to develop the case on its merits – so there is no risk that remand would result in a duplication of effort by the parties or the courts.

We turn to the second ground on which the case might properly remain in federal court: jurisdiction based on diversity of citizenship.

### B. Diversity of Citizenship

A federal court may exercise subject matter jurisdiction based on diversity of citizenship only if the diversity is complete. In the case at bar, Plaintiff is a resident of California. Defendant Scher is a resident of Missouri. Defendant Berkel is a resident of Kansas. Defendant Cherne Construction is a resident of Michigan. Defendant Braverman, however, is a resident of California. Braverman's residency, therefore, would defeat completeness of diversity unless defendants could show that her inclusion in the case by Plaintiff is a sham – that she was named fraudulently as a defendant only for the purpose of depriving defendants of access to a federal forum.

6

### C. Fraudulent Joinder

Defendants bear the burden of proving that Ms. Braverman should be disregarded for purposes of assessing the completeness of diversity on the theory that she is a "sham" defendant. *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir. 1987). In order to prove fraudulent joinder, defendants must show that plaintiff "fails to state a cause of action against a resident defendant, and the failure is *obvious* according to the *settled* rules of the state . . . ." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir.1998) (quoting *McCabe,* 811 F.2d at 1339) (emphasis added). "If there is a non-fanciful possibility that plaintiff can state a claim under California law against the non-diverse defendants the court must remand." *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002).

As these authorities make clear, the burden is on defendants to prove that Plaintiff's cause of action against Ms. Braverman for aiding and abetting the alleged violation of FEHA is not legally cognizable. Having reviewed the relevant California case law and analyzed its implications, we have concluded that Defendants cannot meet this burden.

#### 1. Aiding and Abetting

Under FEHA, it is an unlawful employment practice "[f]or any person to aid, abet, incite, compel, or coerce the doing of any acts forbidden [under the Code section], or to attempt to do so." Cal. Govt. Code § 12940(i). Because FEHA requires California employers to take "immediate and appropriate corrective action" to stop sexual harassment about which they knew or should have known, it is unlawful for "any person" to *aid and abet* an employer from meeting its duty to take such immediate and appropriate corrective action. Cal. Govt. Code § 12940(j) (emphasis added).

FEHA itself does not define 'aiding and abetting' – but California courts have adopted the common law definition in this context. Under the common law rules, a person "aids and abets the commission of an intentional tort if the person [ ] knows

the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325 (1996).

Here, Plaintiff claims in her First Amended Complaint that Defendant Braverman, a Human Resources consultant, violated FEHA by aiding and abetting Defendant Berkel in the breach of Berkel's duty to conduct an objective and thorough investigation into Plaintiff's allegations of sexual harassment. In particular, Plaintiff alleges that Braverman:

> [R]epresented to Plaintiff that she was an attorney, that she was sent by Defendant Cherne to conduct an objective thorough investigation into Plaintiff's allegations of sexual harassment, but that Braverman never intended to do so; rather, Braverman intended to manage Plaintiff and her allegations of sexual harassment in a manner calculated to minimize Berkel's potential liability under FEHA.

First Amended Complaint at 20, ¶ 99. Plaintiff further asserts that the representations Braverman made to Plaintiff during their interactions were knowingly "deceitful." *Id.*

We RECOMMEND that the District Court conclude, as we do, that these allegations (taken at face value, as we must at this juncture) state a claim against Braverman under FEHA for aiding and abetting. If, as alleged, Ms. Braverman knowingly misled Plaintiff into believing that Berkel was fulfilling its duty to conduct an appropriate investigation and to take appropriate corrective action – knowing that Berkel was not doing so – and if Ms. Braverman undertook this course of action in order to help Berkel avoid fulfilling its duties to Plaintiff under FEHA and to discourage plaintiff from pursuing her rights against Berkel, California courts would hold that Ms. Braverman gave "substantial assistance or encouragement" (*see Fiol*, 50 Cal. App. 4th at 1325) to Berkel in breaching its duties to Plaintiff under FEHA.[1]

---

[1] The undersigned notes that Plaintiff alleges that Braverman took affirmative "deceitful" acts to minimize Berkel's liability, and does not allege merely that Braverman failed to act to protect Plaintiff from sexual harassment by Defendant Scher. Aiding and abetting must be distinguished from the mere "failure to act," which under California case law interpreting FEHA, "does not constitute the giving of 'substantial assistance or encouragement' to the tortfeasor," sufficient to incur liability under the Code. *Fiol*, 50 Cal. App. 4th at 1326.

2.   <u>Independent Contractor versus Agent Status</u>

Plaintiff's allegations that Braverman affirmatively acted to assist in minimizing Berkel's liability raise another legal question that we must consider in assessing the viability (in legal theory) of Plaintiff's claim against Braverman for aiding and abetting.  The question we must address is this: is it clearly settled under California law that Ms. Braverman would be considered, in the circumstances alleged by plaintiff, to be a kind of agent of Berkel's that could not be deemed to aid or abet Berkel because she was insufficiently independent?

Under California law, there are circumstances in which an agent cannot be liable for aiding and abetting an employer on the theory that the employer and the agent constitute a single legal entity – a single actor – and a single actor (as a matter of legal tautology) cannot aid and abet (or conspire with) itself.  *See, Fiol*, *supra*, 50 Cal. App. 4th at 1326.  It is far from clear, however, that California courts would hold that anyone who might be deemed an "agent" of an employer for any purpose or in any legal context would, simply because of the attachment of that label, be immune from suit as an aider and abettor of a violation of FEHA.   We note, for example, that a California court of appeal found a viable claim for aiding and abetting under FEHA where independent talent agencies were alleged to have engaged in conduct that aided and abetted television networks, studios, and production companies in a pattern and practice of age discrimination against television writers.  *Alch v. Superior Court*, 122 Cal. App. 4th 339, 389-90 (2004).

For reasons we elaborate below, we conclude that there is a significant unresolved issue under California law that gives Plaintiff a "non-fanciful possibility" of "stat[ing] a claim against the non-diverse defendant [Braverman]" for aiding and abetting. *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002).  That issue is whether Braverman would be deemed the kind of agent that could not be sufficiently independent of Berkel to be deemed an "aider and abettor" under FEHA.   An alternative way to frame this question is this: for purposes

of construing the reach of FEHA's prohibition against aiding and abetting, would California courts deem Ms. Braverman an agent whose legal status merged with Berkel's or, in essence, an independent contractor who was capable, in legal theory, of aiding and abetting Berkel's alleged breaches of FEHA duties?

If Braverman is deemed an independent contractor during the time she investigated Plaintiff's allegations of sexual harassment, then Braverman may very well be at risk for liability to Plaintiff on an aiding and abetting theory under FEHA. *See Alch*, 122 Cal. App. 4th at 389-90. On the other hand, if Braverman were deemed the legal equivalent of an employee of Berkel, she very likely could not be liable to Plaintiff under an aiding and abetting theory. *See Jones v. The Lodge at Torrey Pines P'ship,* 72 Cal. Rptr. 3d 624 (2008); *see also Fiol*, 50 Cal. App. 4th at 1326 ("An employee cannot aid or abet his corporate employer.") .

In assessing whether a person is acting in the capacity of an agent or an independent contractor, California courts consider numerous factors, the most important of which is whether the employer has the "right to control the manner and means of accomplishing the result." *Stilson v. Moulton-Niguel Water District*, 21 Cal. App. 3d 928, 936 (2000). "If the employer has the right to exercise complete control, an employer-employee relationship exists, whether or not that potential control is exercised with respect to all details." *Id.*

In addition to assessing the power to control the way the person carries out her functions, California courts also routinely consider whether the kind of work in question is generally understood as a distinct occupation or business, and, if so, the kind of occupation; the level or nature of the skill required; who supplies the instrumentalities, tools, and place of work; the length of time for which the services are to be performed; the method of payment; whether the work is part of the regular business of the principal; and whether the parties believe they are creating the relationship of employer-employee. *Id.*

Ultimately, determining whether an individual is an agent or an independent

contractor is a complicated and intensely factual inquiry that should be decided by the jury in cases where there is a conflict in the evidence on relevant matters. *See e.g., Channel Lumber Company, Inc. v. Porter Simon, et al.*, 78 Cal. App. 4th 1222 (determining that outside legal counsel was an independent contractor, but that the lawyer-client relationship also had attributes of an agency relationship); *see also Stilson*, 21 Cal. App. 3d at 936.

Here, it is unclear in what capacity Braverman was acting when she interacted with Plaintiff. Braverman asserts that she was "designated by Berkel to act as its agent for the sole purpose for conducting a limited, neutral investigation of Plaintiff's complaint against Mr. Scher. . . ." Declaration of Jessica Braverman In Support of Defendant Berkel & Company's Request for Hearing and/or Objection to Order Re Motion to Dismiss at ¶ 5 (emphasis added). While Ms. Braverman's assertion that she considered herself an agent of Berkel when she was interacting with plaintiff is relevant, it is hardly dispositive of this issue. The facts that she was hired, by her own admission, to proceed in a "neutral" manner – and for a quite limited purpose – tend to support a conclusion that she was acting as an independent contractor (for purposes of determining whether she could be deemed an aider and abettor under FEHA). Being tasked to undertake a neutral investigation is arguably inconsistent with the notion that Berkel would have the "right to control the manner and means of accomplishing the result" — the most important factor in assessing whether a service provider is considered an agent. *Stilson*, 21 Cal. App. 3d at 936.

Several additional facts seem to cut in that same direction: Ms. Braverman had been retained by Cherne, not be Berkel; she was paid by Cherne, not by Berkel; it was at Cherne's direction, at least initially, not Berkel's, that she undertook this assignment; and she completed the work she was asked to undertake in a very short period.

Given the fact that, under California law, determining whether to deem a person an agent or an independent contractor turns largely on a situation-specific

factual inquiry, and given what the record suggests about Ms. Braverman's role and how she came to play it, we cannot say that Defendants have proven that "plaintiff fails to state a cause of action against [the] resident defendant [Braverman], and the failure is *obvious* according to the *settled* rules of the state." *Ritchey*, 139 F.3d at 1318 (emphasis added).

## CONCLUSION

For all the reasons set forth above, we RECOMMEND that the District Court find that, for purposes of determining whether the parties' diversity is complete, defendants have failed to prove that Ms. Braverman is a "sham" defendant who has been joined solely for the purpose of defeating federal court jurisdiction.

It follows that we further RECOMMEND that the District Court conclude that defendants have failed to show that the parties' diversity is complete – and therefore have failed to show that the Court is required to exercise jurisdiction over this case.

Because diversity of citizenship cannot support subject matter jurisdiction in federal court over this litigation, because the outcome of the case will turn on important, complex, and uncertain issues of state law, and because this litigation is in its earliest stages (eliminating the risk that returning to state court will result in wasting the courts' or the parties' resources), we also RECOMMEND that the District Court exercise its discretion to REMAND this case to the state forum from which it was removed, the Superior Court of Contra Costa County.

Because it is not clear that California courts would refuse to recognize the one remaining claim that Plaintiff asserts against Ms. Braverman, we further RECOMMEND that the District Court DENY Ms. Braverman's Motion to Dismiss.

To the extent that any remaining objectives of Defendants' Motion to Dismiss have not been addressed in this Report and Recommendation, we RECOMMEND that those matters not be addressed in this forum but be remanded for considered judgment by the state court.

1   The undersigned hereby ORDERS the Clerk of the Court to randomly reassign
2   this action to a District Judge for review of this Report and Recommendation.

4   **IT IS SO ORDERED, REPORTED AND RECOMMENDED.**

6   Dated:   March 21, 2008

_____
WAYNE D. BRAZIL
United States Magistrate Judge

13