PATRICE R. ZABELL, SBN# 215459
LAW OFFICES OF PATRICE R. ZABELL
2700 Ygnacio Valley Road, Suite 237
Walnut Creek, California 94598-3463
Telephone:   (925) 932-9455
Facsimile:    (925) 932-9468

Attorney for Plaintiff
WINIFRED L. GIBSON-JONES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

| | |
|---|---|
| WINIFRED L. GIBSON-JONES,<br><br>        Plaintiff,<br><br>v.<br><br>BERKEL & COMPANY CONTRACTORS, INC., a foreign corporation; CHERNE CONTRACTING CORPORATION, a foreign corporation; JESSICA BRAVERMAN-SMITH, AKA JESSICA BRAVERMAN, HR Consultant, Cherne Contracting Corporation; GREGORY A. SCHER, AKA WINGNUT SCHER, an individual, and DOES 1-50, inclusive,<br><br>        Defendants. | Case No.  07-06440 PJH<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CHERNE CONTRACTING CORPORATION'S MOTION TO DISMISS PLAINTIFF'S FIFTH CLAIM [FRCP 12(b)(6)]**<br><br>**Hearing Date:** June 4, 2008<br>**Time:** 9:00 a.m.<br>**Courtroom:** 3<br>**Judge:** Hon. Phyllis J. Hamilton |

## I.     INTRODUCTION

Plaintiff, Winifred Gibson-Jones, opposes Defendant Cherne's Motion to Dismiss and requests that the Court DENY their motion in its entirety.

## II.     STATEMENT OF FACTS

In her First Amended Verified Complaint, Plaintiff alleged in relevant part:

13.     Plaintiff alleges that Berkel was performing construction work as a subcontractor at the Tesoro Refinery pursuant to a contract it had with

Case 3:07-cv-06440-PJH   Document 52   Filed 05/14/2008   Page 1 of 10

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

1
**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CHERNE'S MOTION TO DISMISS [FRCP 12(b)(6)]**
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.***; Case No.: 07-06440 PJH**

Cherne Contracting Corporation, which was the general contractor on the job.

…

15.   Plaintiff alleges that Berkel was Cherne's subcontractor on the Tesoro project; that employees of both Cherne and Berkel worked side-by-side at the jobsite; and that Cherne managed certain areas of Berkel's business operations, including, for example, safety training.

…

26.   Plaintiff began working for Berkel at its Tesoro Refinery jobsite in Martinez, California, on September 13, 2006.  During the course of Plaintiff's employment, Wingnut routinely engaged in a continuing pattern of conduct which included uttering sexual and ethnic vulgarities and epithets, (hereinafter, Wingnut's "outrageous rants").

…

28.   Managers of Cherne were well aware of Wingnut's outrageous rants throughout Plaintiff's employment with Berkel.

…

30.   Berkel and Cherne employees shared common lunch and break areas at the Tesoro jobsite.  Plaintiff and Wingnut frequently crossed paths at the lunch tent and in the smoking area, during which times Wingnut engaged in his outrageous rants in the presence of Berkel and Cherne managers.

…

33.   Plaintiff alleges that Cherne managers acquiesced in, and ratified Wingnut's outrageous rants.

…

38.   Plaintiff is a chain-smoker, and strict safety rules at the Tesoro refinery prohibited smoking anywhere on the jobsite other than secure areas explicitly designated for smokers. Wingnut also is a smoker, so there were many times when Plaintiff and Wingnut were both in the smoking area at the same time.  It was in the smoking area, in the presence of other Berkel and Cherne employees, including Joe Jensen, (hereinafter, "Jensen"), Plaintiff's foreman, that the further incidents giving rise to this action largely occurred.

39.   After approximately three weeks after Plaintiff first started on the job, Plaintiff was on a break in the smoking area along with Jensen, her foreman, and several other employees, including Wingnut.  Plaintiff alleges that Wingnut subjected her to a vicious visual and verbal attack, to wit, Wingnut thrust his hips in a sexually suggestive manner while gesticulating that he held Plaintiff's head in his hands, and stated to Plaintiff,

> If you were my wife, I would give it to you until you had stretch marks around your mouth.  But don't worry, I would respect you on your period; I would turn you over and fuck you in your ass.

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

2

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CHERNE'S MOTION TO DISMISS [FRCP 12(b)(6)]**
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*; Case No.: 07-06440 PJH

Several of the men who were present laughed at Wingnut's vicious visual and verbal sexual attack on Plaintiff, including Jensen.

40. Plaintiff alleges that Wingnut psychologically raped Plaintiff, to wit, he intended to force into Plaintiff's mind visualizations of him performing those demeaning and controlling sexual acts; moreover, Plaintiff alleges that he succeeded. As a result of Wingnut's vicious visual and verbal sexual attack, Plaintiff was in emotional shock. Plaintiff continues to have mental visualizations of Wingnut performing those demeaning and controlling sexual acts upon her; and Plaintiff cannot get them out of her mind. As a result, Plaintiff suffers from ongoing severe emotional distress related to those disgusting unwanted mental visualizations. Furthermore, Plaintiff was deeply humiliated because all of the men in the smoking area - her co-workers and her foreman - heard Wingnut's vicious attack. Plaintiff alleges that Wingnut intended to humiliate Plaintiff before her male co-workers, and that his acts were motivated by a perverse desire to entertain them at her expense.

…

43. On October 16, 2006, Plaintiff and Wingnut were once again in the smoking area at the same time. Also present were several other Berkel employees. Wingnut launched into yet another outrageous rant, this time uttering ethnic vulgarities against Filipinos, the disabled, Arabs, Jews, and women. Plaintiff has a daughter who is half-Filipino, so for her, Wingnut's rant about Filipinos was a mean-spirited, hateful attack on her child. For Plaintiff, it was the final straw, and she turned to leave the area. As she turned to leave Wingnut stated, "where are you going?" Plaintiff broke down emotionally and told Wingnut that her daughter is half-Filipino, and that she was not going to take it anymore. In response, Wingnut stated to Plaintiff, "you need to develop a thicker skin."

44. As a result of all of Wingnut's outrageous rants and Berkel's and Cherne's apparent acquiescence in and ratification of Wingnut's conduct, Plaintiff was emotionally distraught, to wit, Plaintiff was weeping copiously and could not think straight. She immediately told Jerry Groce, (hereinafter, "Groce"), Berkel's General Superintendent on the jobsite, that she was quitting and wanted her final paycheck, and the reasons therefor. Groce asked Plaintiff to calm down, have a cigarette, and allow him to contact some people to investigate. Plaintiff followed his direction, hopeful that at last someone in charge was going to do the right thing.

45. Shortly after Plaintiff's conversation with Groce, Plaintiff was approached by Braverman, who introduced herself to Plaintiff as an HR Consultant whom Cherne brought in because Berkel had no one on the jobsite to conduct an investigation. Braverman told Plaintiff that she would be conducting an objective investigation into Plaintiff's harassment complaint. Braverman stated to Plaintiff that she, Braverman, is an attorney, and that she has taught law courses. Plaintiff asked Braverman for Wingnut's legal name, because Plaintiff had decided to file a restraining order against him; however, Braverman told Plaintiff that she did not know

3

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CHERNE'S MOTION TO DISMISS [FRCP 12(b)(6)]**
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*; Case No.: 07-06440 PJH

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA 94598
TEL: (925) 932-9455
FAX: (925) 932-9468

his legal name, but would let Plaintiff know after she interviewed him. Braverman interviewed Plaintiff regarding Plaintiff's allegations of sexual harassment against Scher. Braverman did not ask Plaintiff to write a statement; rather, Braverman took notes during the interview. Also present during the interview was Mike Sellars, whom Plaintiff believes to be a General Foreman employed by Cherne. During the interview, Plaintiff communicated to Braverman in detail her allegations of sexual harassment against Scher. Moreover, Plaintiff informed Braverman that she had previously told Sellars that Wingnut offended her, and that Sellars' response to Plaintiff was, "Get over it. You want to know what Wingnut has said to me?" When Plaintiff made this statement, Braverman looked over at Sellars. Plaintiff inferred from Braverman's body language, that Braverman's reaction conveyed a message along the lines of, "You did? What, are you nuts?" Sellars then apologized to Plaintiff, and stated that this was his first supervisorial job, that he was just learning, and that he was used to women like Pam, (the other woman on that jobsite working for Berkel at the time), who just goes along with everything.

46.      Later that same day, Braverman informed Plaintiff that Wingnut would be fired. Braverman also told Plaintiff that she still did not know Wingnut's legal name, but assured Plaintiff that he would be gone. Over the ensuing days, Braverman attempted to ingratiate herself with Plaintiff on a woman-to-woman basis, and repeatedly encouraged Plaintiff to meet with Zuckerman, whom Braverman represented was a fair and decent man who would provide Plaintiff with a fair resolution of the matter. Plaintiff, however, was most concerned that Braverman conduct a thorough investigation, and that Berkel take appropriate corrective action. Plaintiff was in an emotionally fragile state, and had relied on Braverman's representations related to her intention to conduct a thorough investigation, and her assessment of Zuckerman's character. Consequently, Plaintiff continued to request information from Braverman concerning the progress and outcome of the investigation; however, despite repeated requests, Braverman avoided responding to Plaintiff and ultimately informed Plaintiff that she had turned over all of her files to Berkel, and did not retain any copies. On one occasion, Braverman telephone (sic) Plaintiff, who was at home, on Plaintiff's cell phone. Plaintiff inquired about the outcome of Braverman's investigation. Braverman proceeded to share with Plaintiff the following. Braverman had been in a car accident. The man who hit her did not even speak English. She was injured and hospitalized. She had been pregnant, but lost the baby as a result of the accident. But she got over it, and got on with her life. Braverman stated that she could get fired for sharing this information, but that she believed that we, women, need to stick together; that she, Braverman, was proud of Plaintiff, but that Plaintiff had to pull herself up by the bootstraps and get past this. Braverman again encouraged Plaintiff to call Zuckerman to resolve the matter, and again gave Plaintiff Zuckerman's telephone number. Plaintiff alleges that Braverman intentionally deceived Plaintiff, to wit, Braverman never intended to

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA 94598
TEL: (925) 932-9455
FAX: (925) 932-9468

4

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CHERNE'S MOTION TO DISMISS [FRCP 12(b)(6)]**
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*; Case No.: 07-06440 PJH

conduct an objective or thorough investigation; rather, she intended to conduct an investigation calculated to minimize Cherne's and Berkel's potential liability under FEHA.

47. On October 18, 2006, Plaintiff reported to work and was escorted to the jobsite via van in accordance with the regular routine, at approximately 6:30 a.m. Routinely, everyone met at the lunch tent for a morning safety meeting. When Plaintiff exited the van in front of the lunch tent, Plaintiff saw Wingnut smoking a cigarette and laughing at her. Plaintiff looked at Steve Paine, Berkel's Superintendent, who was in the area, and Plaintiff shrugged, intending to convey, "What's going on? I thought he was out of here?" Paine responded to Plaintiff's shrug by saying, "Don't worry, he'll be out of here. We're getting him his check. Just go into your safety meeting." Plaintiff complied, and after the safety meeting, around mid-morning, Plaintiff was working in a hole below ground level, when she looked up and saw Wingnut standing over her, looking down at her, and laughing. Several other men were standing with him and laughing. Plaintiff was angry and frightened.

48. At around 10:30 a.m., Scher finally left the jobsite. Later that day, Anthony, who was Berkel's safety officer, told Plaintiff that he was very sorry about the whole situation, and stated that the punishment did not fit the crime. Anthony informed Plaintiff that Scher was not fired, contrary to what Jessica Braverman and Paine had told Plaintiff. Anthony said that Berkel was transferring Scher to another jobsite in Southern California. Plaintiff was so angry and upset that she had to leave the worksite. Plaintiff found Paine because she needed a ride to her car. While Paine was driving Plaintiff to her car, she was crying uncontrollably, and told Paine that she just found out that they did not fire Wingnut, but that they transferred him. Furthermore, it appeared that everyone knew that Wingnut was being transferred, except Plaintiff. Plaintiff told Paine that it was humiliating, like a slap in the face, and that it conveyed that Scher's behavior was okay. Paine shrugged, and said he was sorry. Plaintiff later heard that Anthony was terminated by Berkel.

48.(sic) Plaintiff told Zuckerman that she wanted to review the outcome of Braverman's investigation, and that she could not make any further decisions until she had done so. Zuckerman told her he would send her Braverman's report. The following day, Plaintiff received via U.S. mail a letter from Zuckerman, which included a copy of Braverman's letter to him. … On information and belief, Plaintiff alleges that Braverman's letter to Zuckerman was not written until after October 23, 2006.

49.(sic) As Plaintiff read and re-read Zuckerman's and Braverman's letters, Plaintiff descended into further emotional distress, because she realized as she read Braverman's letter that Braverman never intended to conduct a thorough and objective investigation into Plaintiff's allegations of sexual harassment against Wingnut, despite Braverman's representations to her to the contrary. Moreover, Plaintiff felt insulted and angry because as she read Braverman's letter, she realized that all of her interaction with Braverman,

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA 94598
TEL: (925) 932-9455
FAX: (925) 932-9468

and her luncheon with Zuckerman the previous day, were filled with deceit. Plaintiff's realization of Braverman's and Zuckerman's deceptions were akin to an epiphany:  Plaintiff was outraged, and thought to herself, "They were playing me.  How dare they!"   Plaintiff continues to suffer severe emotional distress as a result of Braverman's and Zuckerman's outrageous deceptions.

...

52. Plaintiff alleges that Zuckerman and Braverman conspired to deceive Plaintiff by falsely representing to her that they had met all of their legal obligations to her under FEHA, including a false representation that Braverman's investigation into Plaintiff's complaint of illegal harassment against Wingnut would be objective and complete.  Plaintiff further alleges that Zuckerman and Braverman conspired to deceive Plaintiff in order to make the problem go away with as little disruption to the construction project as possible, and in order to minimize Berkel's potential civil liability under FEHA.

53. Plaintiff alleges that Berkel, through Braverman, intentionally deceived Plaintiff by representing falsely that Scher was going to be fired. Plaintiff alleges that in fact, when Braverman made that representation to Plaintiff, Zuckerman intended to transfer Scher to another Berkel jobsite in Southern California, and that Zuckerman did, in fact, do so.  Moreover, Plaintiff alleges that after Scher was transferred by Zuckerman to Southern California, Scher got a message to her through another union member, who told Plaintiff that Wingnut told him to tell her, "Ha, ha.  Thanks.  Now I'm getting more hours than ever." …

…

57. Plaintiff alleges that Cherne aided and abetted Berkel in its breach of their duty to conduct a thorough investigation into Plaintiff's complaints of sexual harassment.

58. Plaintiff alleges that Braverman aided and abetted Berkel in its breach of their duty to conduct a thorough investigation into Plaintiff's complaints of sexual harassment.

59. Plaintiff alleges that subsequent to Braverman's investigation, Cherne's Vice President of Human Resources, Cathy LaPoint, sent a letter and invoice to Zuckerman for Braaverman's (sic) services.

93. Plaintiff brings this action against Cherne pursuant to Gov't Code § 12940, subd. (i), which prohibits any person from aiding and abetting any of the acts forbidden under FEHA.  Further, Plaintiff alleges that in so doing, Cherne violated the public policy embodied in Gov't Code § 12920. Plaintiff alleges that Cherne intended to help Berkel violate its duty to conduct an objective thorough investigation into Plaintiff's allegations of sexual harassment as required under FEHA.  Plaintiff alleges that Cherne aided and abetted Berkel in creating the appearance that the investigation into Plaintiff's allegations of sexual harassment against Scher would be objective.  Plaintiff alleges that Braverman was acting as Cherne's agent for purposes of liability under the doctrine of respondeat superior, when

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

6
**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CHERNE'S MOTION TO DISMISS [FRCP 12(b)(6)]**
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*; **Case No.: 07-06440 PJH**

> Cherne sent her to assist Berkel in managing Plaintiff's complaint of harassment against Scher, but that neither Berkel, Cherne, nor Braverman ever intended that the investigation would be objective, neutral, or thorough. Plaintiff alleges that Braverman intentionally gave Plaintiff the impression that she would conduct a neutral and thorough investigation, and ingratiated herself with Plaintiff to gain Plaintiff's trust and confidence, in order to minimize Berkel's liability under FEHA.
>
> 94. Plaintiff alleges that she was harmed as a result of Cherne's actions in aiding and abetting Berkel's failure to conduct an objective thorough investigation into Plaintiff's allegations of sexual harassment.

### III. LEGAL ARGUMENT

**A.   Legal Standard for Denying a Motion to Dismiss Pursuant to FRCP 12(b)(6)**

In reviewing a Rule 12(b)(6) motion, the court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.* (9th Cir. 1998) 139 F3d 696, 699; see also *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit* (1993) 507 US 163, 164, 113 S.Ct. 1160, 1161; *United States v. White* (CD CA 1995) 893 F.Supp. 1423, 1428 (quoting text). The sole issue raised by a Rule 12(b)(6) motion is whether the facts pleaded would, if established, support a valid claim for relief. Thus, no matter how improbable the facts alleged are, they must be accepted as true for purposes of the motion. *Neitzke v. Williams* (1989) 490 US 319, 328–329, 109 S.Ct. 1827, 1833.

The complaint must be construed on the assumption that all of its allegations are true ... even if doubtful in fact. *Bell Atlantic Corp. v. Twombly* (2007) 127 S.Ct. 1955, 1965—well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely." In any event, the complaint's allegations must set forth a plausible claim for relief; i.e., facts, however unlikely, that if proved would entitle plaintiff to relief. Courts must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified School Dist.* (9th Cir. 1994) 37 F3d 517, 521 (emphasis added).

**B.   Cherne can be Held Liable for Aiding and Abetting under FEHA**

Under FEHA, it is an unlawful employment practice "[f]or any person to aid, abet, incite, compel, or coerce the doing of any acts forbidden [under the Code section], or to attempt to do

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA 94598
TEL: (925) 932-9455
FAX: (925) 932-9468

7

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CHERNE'S MOTION TO DISMISS [FRCP 12(b)(6)]**
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*; **Case No.: 07-06440 PJH**

1  so." Gov't Code § 12940(i). Because FEHA requires California employers to take "immediate
2  and appropriate corrective action" to stop sexual harassment about which they knew or should
3  have known, it is unlawful for "any person" to aid and abet an employer from meeting its duty to
4  take such immediate and appropriate corrective action. Gov't Code § 12940(j) (emphasis added).

5  Cherne speciously asserts that the FEHA contains no requirement that an employer
6  conduct an investigation after an employee alleges he or she was subject to sexual harassment.
7  Contrary to Cherne's assertion, Gov't Code § 12940, Section 1 of Stats.1984, c. 1754, provides:

> The Legislature finds and declares that it is the existing policy of the State of California to prohibit harassment and discrimination in employment on the basis of any protected classification. Such conduct whether intentional or unintentional is a violation of the civil rights of California citizenry and has been shown to decrease productivity in the workforce. It is the existing policy of the State of California, as declared by the Legislature, that procedures be established by which allegations of prohibited harassment and discrimination may be filed, timely and efficiently investigated, and fairly adjudicated, and that agencies and employers be required to establish affirmative programs which include prompt and remedial internal procedures and monitoring so that worksites will be maintained free from prohibited harassment and discrimination by their agents, administrators, and supervisors as well as by their nonsupervisors and clientele. To further this intent, the Legislature enacts this act.

17  The FEHC regulations that Cherne cites, Cal Code Reg. tit. 2 § 7287.6(b)(3) are an interpretation
18  of the duty articulated in the Legislature's articulated, long-standing policy, and Plaintiff's FAVC
19  states a claim against Defendant Cherne for aiding and abetting Berkel's breach of its duty to
20  take effective remedial steps against discrimination and harassment pursuant to Gov't Code §
21  12940, subd. (i). (FAVC, para. 93).

22  FEHA itself does not define "aiding and abetting" – but California courts have adopted
23  the common law definition in this context. Under the common law rules, a person "aids and
24  abets the commission of an intentional tort if the person knows the other's conduct constitutes a
25  breach of duty and gives substantial assistance or encouragement to the other to so act." *Fiol v.*
26  *Doellstedt* (1996) 50 Cal. App. 4th 1318, 1325. In an age discrimination class action by
27  television writers against studios, networks, and talent agencies under the Fair Employment and
28  Housing Act (FEHA), allegations that talent agencies were liable for aiding and abetting an

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA 94598
TEL: (925) 932-9455
FAX: (925) 932-9468

8
**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CHERNE'S MOTION TO DISMISS [FRCP 12(b)(6)]**
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*; **Case No.: 07-06440 PJH**

1  employer's violation of FEHA stated cause of action; complaints clearly alleged the agencies knew the employers were engaged in systemic discrimination on the basis of age and gave substantial assistance or encouragement to the employers by virtue of their own referral practices, screening out older writers in favor of younger ones, and if writers were able to prove these allegations, which met fair-notice test, they would establish agency liability for aiding and abetting the employers. *Alch v. Superior Court* (2004) 122 Cal.App.4th 339, review denied. Therefore, Cherne can be held liable for aiding and abetting under FEHA.

The allegations in Plaintiff's First Amended Verified Complaint, reiterated above, allege that Cherne intended to help Berkel violate its duty to conduct an objective thorough investigation into Plaintiff's allegations of sexual harassment as required under FEHA; that Cherne aided and abetted Berkel in creating the appearance that the investigation into Plaintiff's allegations of sexual harassment against Scher would be objective; that Braverman was acting as Cherne's agent for purposes of liability under the doctrine of respondeat superior, *when Cherne sent her to assist Berkel in managing Plaintiff's complaint of harassment* against Scher, but that neither Berkel, Cherne, nor Braverman ever intended that the investigation would be objective, neutral, or thorough; and that Braverman intentionally gave Plaintiff the impression that she would conduct a neutral and thorough investigation, and ingratiated herself with Plaintiff to gain Plaintiff's trust and confidence, in order to minimize Berkel's liability under FEHA.  If, as alleged, Cherne sent Braverman to knowingly mislead Plaintiff into believing that Berkel was fulfilling its duty to conduct an appropriate investigation and to take appropriate corrective action – knowing that Berkel was not doing so – and if Cherne sent Braverman to undertake this course of action in order to help Berkel avoid fulfilling its duties to Plaintiff under FEHA and to discourage Plaintiff from pursuing her rights against Berkel – then Cherne can be held liable for giving "substantial assistance or encouragement" *(see Fiol*, 50 Cal.App.4th at 1325) to Berkel in breaching its duties to Plaintiff under FEHA.

/ / /

/ / /

/ / /

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

9

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CHERNE'S MOTION TO DISMISS [FRCP 12(b)(6)]**
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*; **Case No.: 07-06440 PJH**

### IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant Cherne's Motion to Dismiss Plaintiff's Fifth Claim.

DATED: May 14, 2008				LAW OFFICES OF PATRICE R. ZABELL


						By:   /s/ Patrice R. Zabell
						      PATRICE R. ZABELL
						      Attorney for Plaintiff

LAW OFFICES OF
PATRICE R. ZABELL
2700 Ygnacio Valley Road
Suite 270
Walnut Creek, CA  94598
TEL: (925) 932-9455
FAX: (925) 932-9468

10

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CHERNE'S MOTION TO DISMISS [FRCP 12(b)(6)]**
*Gibson-Jones v. Berkel & Company Contractors, Inc., et al.*; **Case No.: 07-06440 PJH**